THE STATE ex rel. BUTLER TOWNSHIP BOARD
OF TRUSTEES et al., Appellants,

v.

MONTGOMERY COUNTY BOARD OF COUNTY
COMMISSIONERS et al., Appellees.

[Cite as *State ex rel. Butler Twp. Bd. of Trustees v. Montgomery
Cty. Bd. of Commrs.*, 162 Ohio App.3d 394, 2005-Ohio-3872.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20725.

Decided July 29, 2005.

Wanda L. Carter and Christopher E. Hogan, for appellants.

John Cumming and Chris Van Schalk, for appellee Montgomery County Board of Commissioners.

Joseph P. Moore, for appellee city of Union.

Catherine A. Cunningham, for appellee Waterwheel Farm, Inc.

---

WOLFF, Judge.

{¶ 1} The Butler Township Board of Trustees ("Butler Township"), as a relator, and several owners of property whose properties extended to the centerline of Jackson Road ("excluded owners")[1] appeal from a judgment of the Montgomery County Court of Common Pleas, which denied their motion for a preliminary injunction.

{¶ 2} On June 24, 2004, Waterwheel Farms, Inc. ("Waterwheel") filed a petition with the Montgomery County Board of Commissioners for annexation to the city of Union of 79.840 acres of its property and of a portion of Jackson Road, situated in Butler Township. The petition was filed under R.C. 709.023, which allows for an expedited annexation proceeding if all of the owners of the property sought to be annexed sign the petition. On July 14, 2004, Butler Township and the excluded owners filed an objection to the annexation. The property owners claimed that because they had not signed the petition, the petition was not signed by all of the owners of the property to be annexed in accordance with R.C. 709.023.

{¶ 3} On July 22, 2004, Butler Township and the excluded owners filed a complaint for a writ of mandamus, declaratory judgment, and injunctive relief,

---

1. Ten owners of property that extends to the centerline of Jackson Road are listed in the caption of the complaint as plaintiffs. One of these owners is also listed in the caption as a relator. The parties and the trial court, however, have generally referred to all of the plaintiffs and Butler Township collectively as relators. An additional eleven property owners are mentioned within the complaint and are listed among the "Excluded Property Owners" in the complaint's allegations. However, as these additional property owners are not named plaintiffs, they are not parties to this action.

along with a motion for preliminary injunction in the Montgomery County Court of Common Pleas. The trial court overruled the motion for preliminary injunction, reasoning that the motion was not ripe until the Montgomery County Commissioners acted on the annexation petition.

{¶ 4} On August 3, 2004, the Montgomery County Commissioners approved the annexation petition. Butler Township filed a motion to enjoin the petition from being approved by the Union City Council, as well as a motion for a nonoral hearing on the motion for a preliminary injunction and to consolidate the hearing with the trial on merits. On September 17, 2004, the trial court overruled the motion for a preliminary injunction, concluding that the excluded owners were not "owners" within the meaning of R.C. 709.02(E) and, thus, they had failed to establish that they had a right to be included in the annexation proceeding.

{¶ 5} Butler Township and the excluded owners (collectively, "relators") raise two assignments of error on appeal.

{¶ 6} I. "The trial court erred in ruling that, because property owned in fee was subject to a right-of-way interest by another, the fee owners of said property are not 'owners' for purposes of an annexation pursuant to R.C. Chapter 709 and, accordingly, their properties may be annexed against their will and without them being counted as owners on an annexation petition."

{¶ 7} In their first assignment of error, relators contend that the trial court incorrectly concluded that the excluded owners were not "owners" for purposes of the annexation procedures set forth in R.C. 709.023.

A. *Statutory Framework*

■ {¶ 8} "[A]nnexation is strictly a statutory process." *In re Petition to Annex 320 Acres to the Village of S. Lebanon* (1992), 64 Ohio St.3d 585, 591, 597 N.E.2d 463. Consequently, the procedures for annexation and for challenging an annexation must be provided by the General Assembly. Id. at 591, 597 N.E.2d 463.

{¶ 9} Since 2001, R.C. Chapter 709 has provided four procedures for the annexation of property. 2000 Am.Sub.S.B. No. 5 ("Senate Bill 5"). Three of those procedures are expedited procedures that may be used when all of the owners of property within the annexation territory sign the petition for annexation. See R.C. 709.021, 709.022, 709.023, and 709.024. Under each of these procedures, the owners of real estate contiguous to a municipal corporation may petition for annexation to that municipal corporation. R.C. 709.02(A).

{¶ 10} R.C. 709.023 establishes an expedited procedure when the land to be annexed into the municipal corporation is not to be excluded from the township under R.C. 503.07. To proceed under R.C. 709.023, an application for annexation

must be signed by all of the owners of the property to be annexed and filed with the clerk of the board of county commissioners of the county in which the property is located. R.C. 709.021(B). Upon receiving the petition, the clerk must cause the petition to be entered upon the board's journal at its next regular session. R.C. 709.023(B). Within five days of filing the petition, the agent for the petitioners must notify, among others, the owners of property adjacent to the territory proposed for annexation or adjacent to a road that is adjacent to that territory and located directly across that road from that territory. Id. Within 25 days after the petition is filed, the municipal corporation and any township in which the property is located must adopt and file with the board of county commissioners an ordinance or resolution consenting or objecting to the proposed annexation. R.C. 709.023(D). If the municipal corporation or any township objects to the annexation, the board of county commissioners must review the petition to determine whether it meets the requirements of R.C. 709.023(E). If the conditions set forth in R.C. 709.023(E) have been met, the board of county commissioners must grant the annexation; if the conditions have not been met, the petition must be denied. R.C. 709.023(F).

{¶ 11} "There is no appeal in law or equity from the board's entry of any resolution under [R.C. 709.023], but any party may seek a writ of mandamus to compel the board of county commissioners to perform its duties under this section." R.C. 709.023(G). R.C. 709.07, which provides for appeals under R.C. Chapter 2506, does not apply to expedited annexations. R.C. 709.021(C).

B. *Ownership under R.C. 709.02(E)*

{¶ 12} At the heart of this appeal is relators' contention that the petition at issue was defective because the petition was not signed by all of the owners of property to be annexed. Prior to Senate Bill 5, R.C. 709.02 defined an owner as "any adult individual seized of a freehold estate in land who is legally competent and any firm, trustee, or private corporation that is seized of a freehold estate in land; except that individuals, firms, and corporations holding easements are not included within such meanings." 1978 Am.H.B. No. 732, 137 Ohio Laws, Part II, 3313.

{¶ 13} The current version of R.C. 709.02(E) defines "owner" or "owners" as:

{¶ 14} "any adult individual who is legally competent, the state or any political subdivision * * *, and any firm, trustee, or private corporation, any of which is seized of a freehold estate in land; *except that easements and any railroad, utility, street, and highway rights-of-way held in fee, by easement, or by dedication and acceptance are not included within those meanings * * *.* For purposes of sections 709.02 to 709.21, 709.38, and 709.39 of the Revised Code, the state or any political subdivision shall not be considered an owner and shall not

be included in determining the number of owners needed to sign a petition unless an authorized agent of the state or the political subdivision signs the petition." (Emphasis added).

{¶ 15} The trial court found that the language of this statute was clear and unambiguous. It reasoned: "[E]asements are excluded from the definition of owner for purposes of annexation. Although Relators hold the land extending to the centerline of Jackson Road in fee simple, the land subject to the annexation is an easement granting the county a right-of-way for use of the road. This type of easement is specifically excluded under the new statute."

{¶ 16} Relators challenge the trial court's interpretation. They assert that the excluded owners own in fee simple the property over which the portion of Jackson Road at issue lies. They thus assert that they are seized of a "freehold estate in land" for purposes of R.C. 709.02(E). They further state that the county, in contrast, holds a nonfee highway right of way over the excluded owners' lands for the purpose of maintaining and improving Jackson Road. Accordingly, relators argue, it is the "township or county or other entity that has a right-of-way or an easement over the same property [that] is excluded as an 'owner.' "

{¶ 17} In response, Waterwheel and the city of Union argue that the trial court correctly found that R.C. 709.02(E) is clear and unambiguous and that it expressly excluded any interest in street and highway rights of way. Waterwheel contends that "right of way in R.C. 709.02 means a strip of land *used* for 'any railroad, utility, street and highway' purpose." (Emphasis sic.) Waterwheel further states that relators' interpretation would render meaningless the express provision of R.C. 709.02 that excludes the state or any political subdivision as an owner in every annexation unless it signs the petition.

{¶ 18} We disagree with the parties and the trial court that the definition of "owner" set forth in R.C. 709.02(E) is unambiguous. Upon review of the language of the current version of the statute—without reference to the pre–Senate Bill 5 version or interpretations of the prior version, there are clearly two equally reasonable available interpretations. First, as relators argue, R.C. 709.02(E) can be read to exclude as owners those entities that hold merely an easement or right-of-way interest in property. Alternatively, as the city and Waterwheel assert, R.C. 709.02(E) can be read to exclude easements and all ownership interests in land used for rights of way.

{¶ 19} When a statute is ambiguous, courts may determine the intent of legislature by considering (1) the object sought to be attained, (2) the circumstances under which the statute was enacted, (3) the legislative history, (4) the common law or former statutory provisions, including laws regarding the same or

similar subject, (5) the consequences of a particular construction, and (6) the administrative construction of the statute. R.C. 1.49.

{¶ 20} Although the trial court initially concluded that R.C. 709.02(E) was clear, it found, in the alternative, that even if the statute were ambiguous, a comparison of the current version of R.C. 709.02(E) with the pre–Senate Bill 5 version supported its interpretation. The trial court concluded, "[I]t is clear that excluding those who hold land easements was the object sought to be attained by the legislature. The focus of the new statute is on the type of ownership interest in the land to be annexed, not on the entity who own[s] it. This reading of the statute gives it meaning when compared to the old language of R.C. 709.02."

{¶ 21} In support of the trial court's interpretation, Waterwheel indicates that the former version of R.C. 709.02 "gave rise to controversy upon both whether the state or a political subdivision could be an owner for annexation and how to treat streets and highways included within an annexation territory, which may vary depending upon how the right-of-way fee was owned (by abutting owners subject to an easement for right of way or by a political subdivision who was not included within the statutory definition of owner)." Waterwheel states:

{¶ 22} "The practical result of the definitional and ownership inconsistencies was for annexation petitioners to exclude roadway[s] from annexation territories to avoid these ownership issues. Courts became divided upon how to treat the 'ownership' of roads and county commissioners throughout the state developed policies on whether only portions of roadway included in annexation territories would be approved. Streets or highways that should logically be included in annexation territory were left out to avoid possible ownership issues sometimes leaving long sections of streets in a township that was surrounded on both sides by a city except for a small municipal crossing. [Senate Bill 5] was enacted to eliminate these issues and to encourage the annexation of roadways to the cities that would be serving the annexation territory and to allow for the logical inclusion of roads without regard to the nature of the varying ownership interests in them."

{¶ 23} The relators do not disagree with the trial court's statement that "excluding those who hold land easements was the object sought to be attained by the legislature." They argue, however, that they do not hold an easement over their portions of Jackson Road—they own the property in fee; it is the township or county that holds an easement to use their property as a right of way. As to the reasons for amending R.C. 709.02, relators state:

{¶ 24} "Ultimately, the statutory exception of 'highway [and other] rights-of-way' (held in fee or by easement or by dedication) had to have been inserted into R.C. 709.02 to clarify that holders of such interest did not need to be counted as owners. Prior to the annexation law amendments, there was conflict on this

issue, for example, as to whether the state of Ohio should be counted as an owner, when it held a right-of-way in either fee or by easement for highway purposes. * * * In short, there is not support for the proposition that the amendment was intended to divest property owners of full property rights, including the right to participate in the annexation process when their properties (or any portion thereof) are being annexed.

{¶ 25} "With the above in mind, it makes sense to exclude from the definition of owner those persons or entities that hold limited interests in property. Inclusion of holders of lesser interests as owners would have the absurd result of having a given piece of property have both the fee owner and a holder of a lesser [interest] being both counted as owners. The Excluded Property Owners are not merely holders of one of these limited interests but owners with the power to grant 'rights of way' and 'easements.' " (Citations omitted).

{¶ 26} The parties are correct that several controversies arose regarding which entities were owners of property for purposes of annexation and whether the state could be considered an owner. However, we have found no legislative history—and the parties have cited none—to clarify the intent of the legislature in modifying the definition of "owner." The Final Bill Analysis provided by the Ohio Legislative Service Commission merely states, "The act modifies former law's definition of an 'owner' to *include* the state and any political subdivision, and to *exclude* railroad, utility, street, and highway rights-of-way held in fee, by easement, or by dedication and acceptance." This review merely tracks the language of the statute and does not resolve the ambiguity.

{¶ 27} As noted by the trial court, the former version of R.C. 709.02 excepted certain entities that "held easements." Thus, the focus of the exception was to exclude from the definition of "owner" certain entities that held a particular interest that was less than a freehold estate in land. We agree that a comparison of the former and current versions of R.C. 709.02 indicates that the current exception is not drafted to exclude certain holders of property interests from the meaning of "owner." Rather, by eliminating the language that certain individuals or entities "holding easements are not included" and excluding instead easements and rights of way, the exception focuses on eliminating certain property interests from the meaning of "freehold estates." In other words, as now constructed, R.C. 709.02 essentially states that owners are those who hold freehold estates in land, except if those freehold estates are easements or certain rights of way.

{¶ 28} Waterwheel and the city would have us conclude that this interpretation is clear and resolves the issue. It does not. Even with this construction, ambiguity exists because rights of way and easements are not necessarily similar terms. R.C. 4511.01(UU)(2) defines "right-of-way" as "[a] general term denoting land, property, or *the interest therein,* usually in the

configuration of a strip, acquired for or devoted to transportation purposes. When used in this context, right-of-way includes the roadway, shoulders or berm, ditch, and slopes extending to the right-of-way limits under the control of the state or local authority." (Emphasis added). In contrast, an easement is "a property interest in the land of another which entitles the owner of the easement to a limited use of the land in which the interest exists." Ohio Jurisprudence 3d (2005), Easements and Licenses, Section 1. Thus, while "easement" refers to the right to use land in a particular way, the term "right of way" may refer to either the land itself *or* the right to use the land for the purpose of a transportation right of way.

{¶ 29} In our view, to read R.C. 709.02's exception consistently, it must be read to exclude either the land that is subject to the excluded property interest or the property interest. Although the current version deleted language related to "holders of easements," we read R.C. 709.02 to mean that "owner" excludes those whose freehold estate consists of an easement but not those whose property is subject to an easement. Reading the exclusion of rights of way in a similar vein, the statute excludes those whose freehold estate consists of the right-of-way interest, but not those with a different freehold estate in that same land.

{¶ 30} In sum, we disagree with the trial court's conclusion that the excluded owners are not "owners" within the meaning of R.C. 709.02. Because the excluded owners had a non-right-of-way freehold interest in a portion of property to be annexed, they do not fall within the statutory exception. Rather, R.C. 709.02 excludes the owner of the right-of-way interest, which in this case is the township.

{¶ 31} Waterwheel asserts that this interpretation renders meaningless the provision that state and political subdivisions are not "owners" unless they sign the petition. We disagree. Although the state and political subdivisions would necessarily hold public street or highway rights of way, other interests that are subject to the exception—railroad rights of way, for example—are not necessarily owned by the state. See *Rieger v. Penn Cent. Corp.* (May 21, 1985), Greene App. No. 85–CA–11, 1985 WL 7919. Accordingly, the exclusion of the state and political subdivisions as owners is not inconsistent with our interpretation of R.C. 709.02.

{¶ 32} Waterwheel has also asserted that because relators are not owners within the meaning of R.C. 709.02(E), they lacked standing to challenge the county commissioner's decision granting the annexation. Because the excluded owners fall within R.C. 709.02(E)'s definition of "owners," they clearly have standing. Waterwheel has also asserted that Butler Township lacks standing. While we question whether the township has standing to seek an injunction, declaratory judgment, or mandamus concerning annexations under R.C. 709.023,

we need not resolve this issue at this time. Butler Township and the excluded owners have jointly appealed the trial court's ruling. Because the excluded owners have standing to assert the assignments of error, the township's status has no bearing on the outcome of this appeal.

{¶ 33} The first assignment of error is sustained.

{¶ 34} II. "The trial court erred in denying relators-appellants' motion for preliminary injunction on the ground that the property owners were not 'owners' for purposes of annexation."

{¶ 35} In their second assignment of error, relators contend that the trial court improperly denied their motion for a preliminary injunction.

{¶ 36} An injunction is an equitable remedy that should be used only when an adequate remedy at law is not available. *Garono v. State* (1988), 37 Ohio St.3d 171, 173, 524 N.E.2d 496. A trial court may, in its discretion, grant an injunction to prevent a future wrong that the law cannot. Id. "The purpose of a preliminary injunction is to preserve the status quo." *Westco Group, Inc. v. City Mattress* (Aug. 15, 1991), Montgomery App No. 12619, 1985 WL 144712. In determining whether to grant injunctive relief, the court considers the following factors: (1) the likelihood or probability of a plaintiff's success on the merits, (2) whether the issuance of the injunction will prevent irreparable harm to the plaintiff, (3) what injury to others will be caused by the granting of the injunction, and (4) whether the public interest will be served by the granting of the injunction. *Corbett v. Ohio Bldg. Auth.* (1993), 86 Ohio App.3d 44, 49, 619 N.E.2d 1145; *Premier Health Care Servs., Inc. v. Schneiderman* (Dec. 28, 2001), Montgomery App. No. 18795, 2001 WL 1658167.

{¶ 37} In our judgment, the trial court erred in its conclusion that a preliminary injunction should not be granted in this case. First, because the excluded owners are owners within the meaning of R.C. 709.02(E), they have demonstrated that fewer than 100 percent of the owners of property to be annexed had signed the petition, and, thus, there is a strong likelihood that they would succeed on their challenge of Waterwheel's R.C. 709.023 annexation petition. Second, as owners of property to be annexed, there is a strong likelihood that the excluded owners would be harmed by permitting the annexation of their property, without their consent, where an expedited procedure is being employed. Third, although an injunction would delay the annexation of Waterwheel's property by the city of Union, this harm has minimal weight if Waterwheel's use of R.C. 709.023 was inappropriate or improperly employed. Finally, it is apparent that the public interest would be served by preserving the status quo while the excluded owners challenge the annexation petition to which they did not consent.

{¶ 38} The second assignment of error is sustained.

{¶ 39} The judgment of the trial court is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Judgment reversed
and cause remanded.

BROGAN, P.J., and DONOVAN, J., concur.