THE STATE EX REL. BUTLER TOWNSHIP BOARD OF TRUSTEES ET AL., APPELLEES, *v.* MONTGOMERY COUNTY BOARD OF COUNTY COMMISSIONERS; CUNNINGHAM ET AL., APPELLANTS.

[Cite as *State ex rel. Butler Twp. Bd. of Trustees v. Montgomery Cty. Bd. of Commrs.*, 112 Ohio St.3d 262, 2006-Ohio-6411.]

(No. 2005–1685—Submitted May 24, 2006—Decided December 13, 2006.)

ALICE ROBIE RESNICK, J.

{¶ 1} This appeal requires us to construe R.C. 709.02(E)'s definition of "owners" in determining the number of owners needed to sign an annexation petition. Specifically, we must determine whether landholders who own the property over which a roadway easement exists are "owners" of the roadway property pursuant to the statute when others seek annexation of the roadway to a municipality. For the reasons that follow, we affirm the judgment of the court of appeals and hold that the landholders of the property at issue in this case are "owners" as defined in R.C. 709.02(E).

I

## Overview of Current Annexation Laws

{¶ 2} Because annexation is strictly a statutory process, *In re Petition to Annex 320 Acres to S. Lebanon* (1992), 64 Ohio St.3d 585, 591, 597 N.E.2d 463, we must focus on the statutes that delineate the requirements for annexation.

{¶ 3} With the passage of Am.Sub.S.B. No. 5 ("Senate Bill 5") in 2001, 149 Ohio Laws, Part I, 621, the General Assembly accomplished a comprehensive reform of Ohio's laws regarding annexation, principally through amendments to R.C. Chapter 709. One of the major innovations of Senate Bill 5 was the establishment of three new specific procedures that allow for expedited annexations when all the property owners within a parcel to be annexed sign an annexation petition.

{¶ 4} Prior to Senate Bill 5, all annexations in Ohio initiated by private property owners followed a single basic procedure, with the requirement that "a majority of the owners" in a specific parcel sign the petition to initiate an annexation.[1] See former R.C. 709.02. 137 Ohio Laws, Part II, 3313. There were no special procedures to expedite the process, and no special procedures existed to govern situations in which all property owners desired annexation.

{¶ 5} The three additional, expedited procedures all apply only when "all of the owners of real estate" within a particular territory request annexation by signing the petition. R.C. 709.021(A) and (B).[2] The first, established by R.C. 709.022, commonly called an expedited type–1 annexation, applies when "all parties," including the township and the municipality, agree to the annexation of property. The second, established by R.C. 709.023, is commonly called an expedited type–2 annexation and applies when the property to be annexed to the municipality will remain within the township despite the annexation. The third type of special annexation, established by R.C. 709.024, is commonly called an expedited type–3 annexation and applies when the property to be annexed has been certified as "a significant economic development project."

{¶ 6} Another significant change brought about by Senate Bill 5, which is critical to this appeal, is in the definition of "owner" or "owners" in R.C. 709.02(E) for purposes of establishing the number of owners who must sign an annexation petition. That statute provides: " '[O]wner' or 'owners' means any adult individual who is legally competent, the state or any political subdivision * * *, and any

---

1. Like the current version, former R.C. 709.16 detailed special procedures for annexation when a municipal corporation itself petitions for the annexation of certain contiguous municipality-owned territory. 142 Ohio Laws, Part I, 98. Those provisions are not relevant to this case.

2. Although they are not implicated in this case, Senate Bill 5 also made significant modifications to the procedures covering an annexation requested by a majority (but fewer than all) of the owners. See, e.g., R.C. 709.03, 709.031, 709.032, and 709.033.

firm, trustee, or private corporation, any of which is seized of a freehold estate in land; except that easements and any railroad, utility, street, and highway rights-of-way held in fee, by easement, or by dedication and acceptance are not included within those meanings * * *. [T]he state or any political subdivision shall not be considered an owner and shall not be included in determining the number of owners needed to sign a petition unless an authorized agent of the state or the political subdivision signs the petition." The R.C. 709.02(E) definition applies to all of the four types of annexation discussed above.

{¶ 7} The annexation pursued in this case is an expedited type–2 annexation, which can occur only when the territory to be annexed "does not exceed five hundred acres." R.C. 709.023(E)(3). According to R.C. 709.023(H), unless otherwise agreed, "territory annexed into a municipal corporation pursuant to this section shall not at any time be excluded from the township * * * and, thus, remains subject to the township's real property taxes." Therefore, when property is annexed to a municipality under R.C. 709.023, the residents of the territory become residents of both the township and the municipality, subject to the taxes of both, and potentially able to receive services from either.

{¶ 8} An examination of Senate Bill 5 indicates that some of the overall goals of the bill—including those of the new expedited procedures—were to promote consistency in decision-making by putting in place firm standards to govern the consideration of annexation petitions, to improve the efficiency of annexations by creating the expedited processes, and to promote cooperation among local governments.

II

Facts and Procedural History

{¶ 9} The facts of this case are not in dispute. On June 24, 2004, Waterwheel Farm, Inc., now represented by statutory agent respondent-appellant Catherine Cunningham ("Waterwheel"), filed an annexation petition under R.C. 709.023 with respondent the Montgomery County Board of Commissioners for the annexation of 79.840 acres from Butler Township to respondent-appellant the city of Union. In addition to property owned by Waterwheel, the petition acreage included a portion of Jackson Road (along with the berm, shoulder, and other incidentals of the right-of-way) that does not abut Waterwheel's property.

{¶ 10} On July 14, 2004, relator-appellee Butler Township Board of Trustees ("Butler Township") filed a resolution opposing the annexation as an objection with the board of county commissioners. See R.C. 709.023(D).[3] One of the bases

---

3. R.C. 709.023(D) details that the municipality to which annexation is proposed and the township where the property is located may consent or object to the proposed annexation. Any objection

of Butler Township's objection was its contention that the annexation could not proceed because in its view, fewer than all of the property owners involved had signed the annexation petition. The property owners referred to in the objection were a number of landowners whose properties adjoin Jackson Road and who are the fee-simple owners (up to the centerline of the road) of the property over which the roadway passes, subject to an easement for the right of way. Except for the roadway and its supporting property, the property of these Butler Township landowners is not part of the territory covered by the annexation petition.

{¶ 11} On July 22, 2004, Butler Township and some of the property owners referred to in the objection ("the excluded landholders") filed an action in the Montgomery County Court of Common Pleas, seeking a writ of mandamus, a declaratory judgment, and injunctive relief, including a preliminary injunction. On August 2, 2004, the trial court denied a preliminary injunction, ruling that the board of county commissioners had to first act on the petition before the motion for preliminary injunction was ripe.

{¶ 12} Because an objection was filed under R.C. 709.023(D), the board of county commissioners considered the petition under R.C. 709.023(E), to determine whether the conditions set forth in that statute were met.[4] On August 3, 2004, the board of county commissioners granted the petition, finding all relevant R.C. 709.023(E) conditions satisfied. See R.C. 709.023(F).[5] Included within the findings was that "[t]he persons who signed the petition * * * constitute all of the owners of real estate" in the territory proposed for annexation.

{¶ 13} On August 5, 2004, Butler Township and the excluded landholders challenging the annexation petition again moved in the trial court for a prelimi-

---

must be based solely upon the failure of the annexation petition to meet the conditions set forth in R.C. 709.023(E). If neither the municipality nor the township timely objects to the annexation, the board of county commissioners must grant it. If either objects, the board of county commissioners must review the petition under R.C. 709.023(E).

4. R.C. 709.023(E) lists seven conditions that the board of county commissioners must find have been met before it can grant the petition: (1) that the petition complies with requirements of R.C. 709.021, (2) that all of the owners of real estate to be annexed have signed the petition, (3) that the territory to be annexed does not exceed 500 acres, (4) that the territory to be annexed is contiguous with the municipal corporation for a continuous length of at least five percent of the perimeter of the territory to be annexed, (5) that the annexed territory will not surround an unincorporated area of the township, (6) that the municipality has agreed to provide services specified in R.C. 709.023(C), and (7) if the annexation will divide or segment a street or highway, thereby creating "a road maintenance problem," that the municipality has agreed to assume maintenance of the road or "otherwise correct the problem."

5. Under R.C. 709.023(F), if the board of county commissioners finds that all seven conditions of R.C. 709.023(E) have been met, it shall grant the annexation petition. If the board finds one or more conditions not met, it shall state which were not met and deny the petition.

nary injunction and for other relief.[6]   The trial court overruled the motion on September 17, 2004, finding that the holders of the property over which the roadway easement passes "are not owners under R.C. 709.02(E).   Therefore they have failed to establish that they have a legal right to be part of the annexation proceeding or to dismiss the annexation petition."

{¶ 14} Butler Township and the relevant excluded landholders appealed to the Court of Appeals for Montgomery County.   Upon remand for clarification of whether a final order was intended, the trial court issued an amended order stating that all issues in the complaint were resolved and that there was no just reason for delay.   The court of appeals then reversed the trial court's judgment. 162 Ohio App.3d 394, 2005-Ohio-3872, 833 N.E.2d 788.   The court of appeals determined that R.C. 709.02(E) is ambiguous as to whether the excluded landholders must be counted in determining whether all of the owners had signed the annexation petition and concluded that they must be.   Id. at ¶ 18 and 30.   The court of appeals ruled that the trial court had erred in not counting the excluded landholders and that it should have granted a preliminary injunction.   Id. at ¶ 37.

{¶ 15} The cause is now before this court pursuant to our acceptance of a discretionary appeal.

### III

### Analysis

{¶ 16} Although it is necessary to set forth the relevant annexation statutes in detail to put the issue and the parties' arguments in context, the issue is straightforward:  Is it the intent of the General Assembly, as expressed within R.C. 709.02(E), that a landholder who owns in fee simple the property underlying a roadway over which a political subdivision holds an easement must be counted as an owner for purposes of determining the percentage of owners who have signed an annexation petition?   If such a landholder is an "owner" as defined, then the annexation in this case does not comply with R.C. 709.023(E)(2), because fewer than all the owners have signed the petition, and it may not proceed as proposed.   If such a landholder is not an "owner" as defined, then all owners have signed the petition and that condition is satisfied.

{¶ 17} We must first resolve whether the portion of R.C. 709.02(E) at issue is ambiguous.   Tailored to the situation before us and stripped to its essentials, that statute provides:  "[O]wner * * * means any adult individual who is legally

---

6.   Under R.C. 709.023(A) and (G), there is no appeal from a decision of a board of county commissioners on an R.C. 709.023 annexation.   However, under R.C. 709.023(G), "any party may seek a writ of mandamus to compel the board of county commissioners to perform its duties under this section."

competent * * * [and] seized of a freehold estate in land;  except that easements and any * * * street, and highway rights-of-way held in fee, by easement, or by dedication and acceptance are not included within those meanings * * *."

{¶ 18} It is clear that were it not for the exception clause, the excluded landholders would be counted as "owners."  Consequently, we must determine whether that exception clause (amended by Senate Bill 5) removes them from the statutory group of "owners."

{¶ 19} Prior to Senate Bill 5, "owner" or "owners" was defined in the last paragraph of R.C. 709.02 as "any adult individual seized of a freehold estate in land who is legally competent and any firm, trustee, or private corporation that is seized of a freehold estate in land;  except that individuals, firms, and corporations holding easements are not included within such meanings * * *." 1978 Am.H.B. No. 732, 137 Ohio Laws, Part II, 3313.  Under that prior statute, the excluded landholders would have been counted as owners.

{¶ 20} Senate Bill 5 modified the exception clause (which formerly provided only that those holding easements are not owners), adding that "rights-of-way held in fee, by easement, or by dedication and acceptance are not included within those meanings." [7]

{¶ 21} Appellees' position is that the exception clause is intended to remove only the holder (in this case the political subdivision) of a *lesser* interest from the definition of "owners," in the same way that the statute excepts a holder of an easement, and that the phrase "rights-of-way" in the clause refers to interests held by others than those in the position of the excluded landholders.  According to appellees, because the excluded landholders own the land underlying the roadway easement in fee simple, they are owners of that property, and the exception clause does not refer to them.  They argue that the addition to the exception clause of "rights-of-way held in fee, by easement, or by dedication and acceptance" applies mostly to the interests of political subdivisions and not to those of the excluded landholders.

---

7.  {¶ a} Another Senate Bill 5 change to the definition of "owner" in R.C. 709.02(E) was to add that "the state or any political subdivision shall not be considered an owner and shall not be included in determining the number of owners needed to sign a petition unless an authorized agent of the state or the political subdivision signs the petition."

{¶ b} Our consideration of the cases cited by the parties makes apparent that this provision was meant to address a split among various appellate districts interpreting former R.C. 709.02's definition of "owner" insofar as whether a political subdivision was a necessary signer of an annexation petition when property held in some way by that political subdivision was included within territory to be annexed.  The parties expend considerable effort debating the relevance of this provision to the issue before us.  However, we perceive little direct connection between the parties' arguments in this regard and the issue we address.

{¶ 22} The gist of appellants' position, on the other hand, is that the exception of "rights-of-way held in fee" is meant to exclude *all* holders of *any* interests insofar as a right of way is concerned and to apply to a property owner who owns the land underlying a roadway over which a political subdivision holds an easement to maintain the roadway. Appellants contend that the exception clause is meant to remove the excluded landholders from the group of owners who must sign an annexation petition, because the clause's use of "rights-of-way" does not describe an interest in land but refers to the land itself.

{¶ 23} Furthermore, appellants urge that the court of appeals' interpretation of R.C. 709.02(E) renders meaningless the language inserted into the exception clause by Senate Bill 5 regarding "rights-of-way." Because the exception clause (both before and after Senate Bill 5) separately already excludes the holders of easements from the definition of "owners," appellants argue that the reference to "rights-of-way" must be to something other than just a political subdivision's interests.

{¶ 24} The court of appeals based its conclusion that R.C. 709.02(E) is ambiguous in large part on the observation that "right-of-way" can have two different meanings, reasoning that "the term 'right-of-way' may refer to either the land itself *or* the right to use the land for the purpose of a transportation right of way." (Emphasis sic.) 162 Ohio App.3d 394, 2005-Ohio-3872, 833 N.E.2d 788, at ¶ 28.

{¶ 25} We agree with the conclusion reached by the court of appeals that R.C. 709.02(E) is ambiguous. If the term "rights-of-way" in the exception clause is meant to refer to the land itself, then the statute can be read to except the excluded landholders from the definition of "owners." However, if the term "rights-of-way" is meant to refer only to the right to use the land, then the statute would not except the excluded landholders. Our consideration of the language of R.C. 709.02(E) on its face does not eliminate either alternative as a plausible meaning. We therefore disagree with appellants' position that the statute clearly and unambiguously provides that the excluded landholders are not owners.

{¶ 26} Because we have determined that R.C. 709.02(E) is ambiguous as it relates to this case, we must consider what the intent of the General Assembly was in enacting the statute with the chosen wording.

{¶ 27} As did the court of appeals, we resort to R.C. 1.49 as an aid in statutory construction in an attempt to discern the General Assembly's intent. We consider:

{¶ 28} "(A) The object sought to be attained;

{¶ 29} "(B) The circumstances under which the statute was enacted;

{¶ 30} "(C) The legislative history;

{¶ 31} "(D) The common law or former statutory provisions, including laws regarding the same or similar subjects;

{¶ 32} "(E) The consequences of a particular construction; and

{¶ 33} "(F) The administrative construction of the statute."

{¶ 34} Our task in this regard is complicated by the fact that (as the court of appeals found and the parties agree) no legislative history is available to clarify the intent of the legislature on the point at issue. See 162 Ohio App.3d 394, 2005-Ohio-3872, 833 N.E.2d 788, at ¶ 26. Therefore, we must look to other factors as the focus of our inquiry.

{¶ 35} Many of the opposing parties' arguments going to the General Assembly's intent rely on public policy considerations in an attempt to convince us that a particular construction of the statute is more sound. These arguments, while valid for some purposes, seem to do very little in assisting us in discovering the General Assembly's intent.

{¶ 36} For example, appellants and their supporting amici state that, in some situations, annexations have led to laterally segmented roadways, and in others, an annexation would sometimes result in a roadway being split down its center-line, so that different jurisdictions each might control one-half of the same section of roadway. Appellants also mention that there arose situations in which an annexation petition would intentionally exclude a roadway that should have been included, because of problems with obtaining approval for the roadway's annexation.

{¶ 37} Appellants posit that a purpose of Senate Bill 5 was to eliminate the problems that have been associated in the past with piecemeal annexations of (or failures to include) roadways that often caused maintenance of those roadways to be split among several jurisdictions. Appellants argue that not counting the excluded landholders as owners will further that purpose by making it easier to annex roadways.

{¶ 38} In response, appellees and their supporting amicus urge that the General Assembly dealt with the problem of fragmented roadways through R.C. 709.023(E)(7) by making road maintenance a consideration that the board of county commissioners must find has been satisfied before an expedited type–2 petition can be approved.[8] Appellees argue that there is no indication that the R.C. 709.02(E) definition of "owner" was also meant to accomplish that result.

---

8. R.C. 709.024(F)(3) and 709.033(A)(6) similarly require a board of county commissioners to consider road-maintenance problems when determining whether to grant an expedited type–3 annexation and a regular (unexpedited) annexation, respectively.

{¶ 39} Appellees also argue that the annexation at issue is a balloon-on-a-string annexation (with a long narrow stretch of roadway attached to a larger parcel of land) of the type this court disapproved in *Middletown v. McGee* (1988), 39 Ohio St.3d 284, 530 N.E.2d 902, and that if this court adopts appellants' interpretation of R.C. 709.02(E), the principles underlying that case will be violated. Appellees further question the motives behind the roadway's annexation, contending that the proposed annexation would not have met the five percent contiguity requirement of R.C. 709.023(E)(4) without the inclusion of the portion of Jackson Road at issue in the annexation territory. Appellants in their reply briefs vigorously dispute both contentions.

{¶ 40} While we believe that segmentation of roadways and splits of roadway maintenance among jurisdictions are a significant concern, we discern very little indication that that problem is addressed in R.C. 709.02(E). Likewise, while we believe that balloon-on-a-string annexations can be a significant problem, we see little indication that the statutory definition of "owners" was meant to address that issue. In addition, the arguments going to the five percent contiguity requirement do not relate to the definition of "owners" and are beyond the scope of this appeal.

{¶ 41} One feature of the statute that does seem significant is that the exception clause follows its mention of "rights-of-way" with three different interests. Two of those are that the definition of "owner" does not include rights of way held "by easement" and rights of way held "by dedication and acceptance." Those two interests are both ways in which political subdivisions typically use or acquire property over which a right of way passes. We think it likely that because those two concepts both refer to a political subdivision's interests, the interest "held in fee" mentioned directly before in the exception clause may also refer (at least in part) to the interests of a political subdivision and not to all interests of all landholders of any rights of way. However, because the clause also refers to railroad and utility rights of way, and those interests are usually held by entities other than political subdivisions, it appears that this consideration is not determinative either.

{¶ 42} An argument raised by appellants is that because the excluded landholders exercise virtually no dominion and control over the roadway because of the easement, the excluded landholders are not, for all practical purposes, suffering a significant loss if they are not counted as owners. Appellants urge that this consideration is especially true in an expedited type–2 annexation, in which the annexed property remains in the township despite its annexation to the municipality. However, because the R.C. 709.02(E) definition of "owners" applies to all annexations—not just to those under R.C. 709.023—a consideration specific to

only one type of annexation is of little relevance to our overall interpretation of R.C. 709.02(E).

{¶ 43} A related consideration put forth by appellants is that when a political subdivision itself owns a roadway in fee (as is often the case with state highways, in which the roadway property may be owned in fee by the state), adjoining landowners are not owners of property under the roadway and therefore are not counted for purposes of a petition to annex the roadway.[9] Appellants urge that the excluded landholders in the instant case are in essentially the same position as owners who abut a highway fully owned by the state, so that it is not inconsistent to treat the excluded landholders the same way (as not owners), particularly when they likewise exercise virtually no control over the roadway. However, as appellees repeatedly point out, the excluded landholders here do own a full fee interest (even if they can assert virtually no control over the roadway due to the easement over it). For that reason, there is a difference between them and the owners of property along a state highway when the state fully owns a roadway in fee.

{¶ 44} We are unconvinced by any of the arguments going to the intent of the legislature in enacting the Senate Bill 5 amendments to R.C. 709.02(E). After considering the statute under the factors of R.C. 1.49, we believe that neither interpretation of the statute has emerged as significantly more likely than the other. For each point that one party makes, the other side has a corresponding response that seems to seriously undermine the value of the point attempted.

{¶ 45} After considering all of the arguments raised by the parties and their amicus supporters, we determine that, in the absence of the emergence of a more clear perception of how to interpret the statute, the balance must fall on the side of the appellees in this case. Even though the excluded landholders have little say over the use of the roadway itself, it cannot be questioned that they own the property underlying the roadway and will be affected if the road that runs directly in front of their property is annexed into the municipality.

{¶ 46} We hold that the excluded landholders must be counted as "owners" under current R.C. 709.02(E) because not to count them would deprive them of one of the property rights that they would normally have as the holders of an undeniable and definite property ownership interest. Furthermore, the excluded landholders were "owners" under the former statute, and the ambiguous amend-

---

9. After Senate Bill 5, when an annexation sought by private property owners includes a roadway owned in fee simple by the state or another political subdivision, the state or political subdivision is not counted as an "owner" under R.C. 709.02(E) for purposes of signing the annexation petition unless the state or political subdivision chooses to sign the petition. In a situation in which the state or political subdivision fully owns the roadway but does not sign the petition, roadway property annexed into a municipality would have no "owner" under the definition of R.C. 709.02(E).

ment does not clearly indicate the General Assembly's intent to change that status. To define the excluded landholders as outside the ambit of "owners" strikes us as simply too great a leap to take, given the ambiguity of the statute. If the General Assembly did indeed intend to exclude them from the definition of "owners," we believe that it could have, and should have, done so more clearly.

## IV

### Conclusion

{¶ 47} For all of the foregoing reasons, we hold that for purposes of R.C. 709.02(E), when annexation of a roadway into a municipality is sought, landholders who own the property over which a roadway easement exists are "owners" of the roadway and therefore must be included in determining the number of owners needed to sign the annexation petition. Accordingly, the excluded landholders in this case must be counted as "owners" under R.C. 709.02(E). We affirm the judgment of the court of appeals.

Judgment affirmed.

MOYER, C.J., PFEIFER, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

LUNDBERG STRATTON, J., dissents.

———

**LUNDBERG STRATTON, J., dissenting.**

{¶ 48} Because I would hold that R.C. 709.02(E) excepts from the definition of "owner" all holders of property rights that fall within a right of way, I respectfully dissent. I believe that the majority ignores the history behind the passage of 2001 Am.Sub.S.B. No. 5 and the new definition of "owner" in R.C. 709.02(E), which was intended to remove the very problem that the majority's interpretation would perpetuate. If the majority's holding does not accurately define these property rights, I invite the General Assembly to revisit and clarify the meaning of "owner" within R.C. 709.02(E).

{¶ 49} In amending R.C. 709.02, Am.Sub.S.B. No. 5 added "rights-of-way" to the list of holders of property rights that are excluded from the definition of "owner." See R.C. 709.02(E). The critical question is whether "rights-of-way" means merely the *interest* that establishes the right of way or whether it means the strip of *land* dedicated as the right of way. If it means the former, as the majority concludes, then a private person who owns a fee interest that underlies a public roadway is an owner for purposes of annexation, and he or she must consent before that portion of the road may be annexed to a municipality in a type–2 annexation. If it means the latter, then no holder of any property interest within a right of way is defined as an owner, and no consent is required to annex

that portion of the road. The determination of this issue depends upon the meaning of "owner" as defined in R.C. 709.02(E). I believe that "owner" excludes from its definition all holders of property interests that fall within a right of way.

## I. THE LEGISLATIVE INTENT OF R.C. 709.02(E)

{¶ 50} A court's purpose in construing a statute is to determine the intent of the General Assembly. *State ex rel. Choices for South–Western City Schools v. Anthony*, 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 40. In determining intent, a court must first look to the language of the statute in question. *Carnes v. Kemp*, 104 Ohio St.3d 629, 2004-Ohio-7107, 821 N.E.2d 180, ¶ 16. "In reviewing a statute, a court cannot pick out one sentence and disassociate it from the context, but must look to the four corners of the enactment to determine the intent of the enacting body." *State v. Wilson* (1997), 77 Ohio St.3d 334, 336, 673 N.E.2d 1347. Finally, statutory language "should not be construed to be redundant, nor should any words be ignored." *E. Ohio Gas Co. v. Pub. Util. Comm.* (1988), 39 Ohio St.3d 295, 299, 530 N.E.2d 875.

{¶ 51} Former R.C. 709.02 essentially defined "owners" as certain entities and persons who were seized of a freehold estate, but excluded persons and certain entities that held easements and persons or entities that became owners for the purpose of affecting the number of owners required to sign the annexation petition.[10] Amended R.C. 709.02(E) added the state and political subdivisions as owners (but only if they sign an annexation petition). It also excluded from the definition of "owner" "any railroad, utility, street, and highway rights-of-way held in fee, by easement, or by dedication and acceptance." [11]

---

10. Former R.C. 709.02 provided that " 'owner' or 'owners' means any adult individual seized of a freehold estate in land who is legally competent and any firm, trustee, or private corporation that is seized of a freehold estate in land; except that individuals, firms, and corporations holding easements are not included within such meanings; and no person, firm, trustee, or private corporation that has become an owner of real estate by a conveyance the primary purpose of which is to affect the number of owners required to sign an annexation petition is included within such meanings." 137 Ohio Laws, Part II, 3313.

11. Amended R.C. 709.02 provides that " 'owner' or 'owners' means any adult individual who is legally competent, the state or any political subdivision as defined in section 5713.081 of the Revised Code, and any firm, trustee, or private corporation, any of which is seized of a freehold estate in land; except that easements and any railroad, utility, street, and highway rights-of-way held in fee, by easement, or by dedication and acceptance are not included within those meanings; and no person, firm, trustee, or private corporation, the state, or any political subdivision, that has become an owner of real estate by a conveyance, the primary purpose of which is to affect the number of owners required to sign a petition for annexation, is included within those meanings. For purposes of sections 709.02 to 709.21, 709.38, and 709.39 of the Revised Code, the state or any political subdivision shall not be considered an owner and shall not be included in determining the number of owners needed to sign a petition unless an authorized agent of the state or the political subdivision

{¶ 52} By adding "rights-of-way" to the exclusion clause, I believe the General Assembly intended to exclude from the definition of "owner" more than just those who hold an interest that creates a right of way. Only the state and political subdivisions acquire rights of way to build public roads. A right of way for a public road is typically acquired through a fee interest or by an easement. See *Trotwood Congregation of Jehovah's Witnesses v. Measel* (Feb. 4, 1993), 2d Dist. No. 13471, 1993 WL 26776, at *2. Under amended R.C. 709.02(E), the state and political subdivisions are not owners unless they sign a petition for annexation. Thus, the General Assembly has excluded from the definition of "owner" the governmental ownership interest in all public streets or highways. R.C. 709.02(E). What then does the street and highway rights of way exception mean? I believe that it must mean the land itself, i.e., the strip of land that is devoted to public travel. Any other interpretation would make the exclusion of government entities redundant and render the street and highway rights-of-way exception meaningless. This means that all property interests (including those that underlie a roadway easement) that fall within a street or highway right of way are excluded from the meaning of "freehold estate" as that phrase is used in R.C. 709.02(E). In other words, the holder of a freehold estate of property is not an owner under R.C. 709.02(E) to the extent that the freehold estate is within the boundaries of a street or highway right of way.

## II.  ROAD SEGMENTATION

{¶ 53} The history surrounding the passage of Am.Sub.S.B. No. 5 clearly indicates that the General Assembly amended R.C. 709.02(E) to exclude from the definition of "owner" all holders of interests within a right of way, primarily to eliminate road segmentation.

{¶ 54} Road segmentation is the unintended and unwanted jurisdictional fragmentation of roads between municipalities and townships resulting in a municipality being responsible for one portion of a road while a township is responsible for another. Road segmentation occurs only where the right of way is held by easement.[12] Where property abuts a road held by easement, the owner of that property owns a fee interest to the centerline of the road. *Finlaw v. Hunter* (1949), 87 Ohio App. 543, 43 O.O. 355, 96 N.E.2d 319, paragraph four of the syllabus. The purpose of owning a fee interest in property subject to a right of way is to ensure access to the property should the state or political subdivision

signs the petition. The authorized agent for the state shall be the director of administrative services."

12.  When the state or a political subdivision owns in fee the right of way, it owns the entire bundle of rights of ownership within that right of way.

vacate the road. See *Grabnic v. Doskocil*, 11th Dist. No. 2002–P–0116, 2005-Ohio-2887, 2005 WL 1383967.

{¶ 55} In order to avoid having to get consent from often multiple fee owners, annexation petitioners either avoided annexing the roads that bordered their properties or annexed only the portions of the roads that fronted their properties. The unintended result of this practice was jurisdictionally segmented roads having one section within the jurisdiction of a municipality and another section within the jurisdiction of a township. On other occasions, a road might be split down the middle, with one lane within a municipality and the other within a township. These arbitrary segmentations resulted in conflicts between townships and municipalities regarding road maintenance, emergency services, or traffic-control devices.

{¶ 56} Appellants, the statutory agent of Waterwheel Farm, Inc., and the city of Union, as well as amici the County Commissioners Association of Ohio and the County Engineers Association of Ohio, claim that for years, various entities have lobbied the General Assembly to amend the annexation process to resolve various issues, including the road-segmentation problem. They further allege that the change in the definition of "owner" provides the solution to the segmentation problem. Specifically, they assert that "rights-of-way" in the exclusion clause of R.C. 709.02(E) must mean the land itself, not the right to use the land for roadway purposes, because only this meaning addresses the road-segmentation problem.

{¶ 57} Both the majority and the court of appeals interpret "rights-of-way" to mean the right to use the land for roadway purposes, not the land itself. Under this interpretation, persons who own a fee interest in property subject to a right of way continue to be within the definition of "owners." This interpretation fails to address the road-segmentation problem.

{¶ 58} Alternatively, defining "rights-of-way" to mean the land itself means that persons who own a fee interest in property subject to a right of way are no longer within the definition of "owners" in R.C. 709.02(E). This interpretation does address the road-segmentation problem because it requires no consent from the private entity or person who owns an underlying fee interest. Thus, petitioners can more easily annex uninterrupted portions of road, thereby avoiding segmentation of the road. Further, this definition of "rights-of-way" is consistent with the language of the statute as read in its entirety.

{¶ 59} The parties appear to agree that the general purpose of Am.Sub.S.B. No. 5 was, in the words of amicus Ohio Township Association, "to enact a comprehensive annexation reform that promoted cooperation, efficiency and *orderly growth*." (Emphasis added.) Resolving the road-segmentation problem promotes orderly growth.

## III. OTHER SEGMENTATION ISSUES

{¶ 60} Under a type–2 annexation, county commissioners must refuse an annexation if any of several criteria are not met. R.C. 709.023(F). One of the criteria is that if because of the annexation a road will be divided so as to "create a road maintenance problem," the municipality "to which annexation is proposed" must agree to "assume the maintenance of that street" or "otherwise correct the problem." [13]

{¶ 61} I would find that this criterion is merely an additional tool to resolve road-maintenance issues that arise because of annexation and emphasizes that persons who own a fee interest within a right of way should not be within the definition of "owner" for purposes of annexation. R.C. 709.023(E)(7) does not alter the legal responsibility for the sections of road that are annexed. Further, R.C. 709.023(E)(7) does not address who has responsibility to provide emergency services, traffic control devices, etc.

## IV. PROPERTY RIGHTS

{¶ 62} The majority examines the arguments from all the parties as to the meaning of "owner" within R.C. 709.02(E) but finds none to be persuasive. Instead the majority finds that "[e]ven though the excluded landholders have little say over the use of the roadway itself, it cannot be questioned that they own the property underlying the roadway." Similarly, the appellees argue that excluding the holder of a fee interest in property subject to a right of way from the definition of owner in R.C. 709.02(E) deprives that fee holder of his or her property rights. I disagree.

{¶ 63} Eminent-domain law recognized that the owner of a fee interest in a road might be due compensation for a taking because of additional burdens placed on the right of way. See, e.g., *Donough v. Mansfield Tel. Co.* (App.1937), 8 O.O. 27, 32 N.E.2d 480. However, this is not an eminent-domain case. Upon annexation, the property owner's fee interest in the roadway is not taken from the property owner, but the land simply becomes part of a different political subdivision.

{¶ 64} Further, annexation is solely a statutory process. R.C. Chapter 709. The "rights-of-way" exclusion in R.C. 709.02(E) excepts from ownership only the

---

13. R.C. 709.023(E)(7) states the condition as follows: "If a street or highway will be divided or segmented by the boundary line between the township and the municipal corporation as to create a road maintenance problem, the municipal corporation to which annexation is proposed has agreed as a condition of the annexation to assume the maintenance of that street or highway or to otherwise correct the problem. As used in this section, 'street' or 'highway' has the same meaning as in section 4511.01 of the Revised Code."

fee interest that is within the boundary of a right of way.[14] A fee interest that is subject to a right of way for a street or highway has no beneficial use to the fee holder because it is dedicated for use as a public road. See *Smedes v. Cincinnati Interterminal Ry.* (1906), 16 Ohio Dec. 743, 1906 WL 839. In fact, the fee interest in property subject to a right of way held by easement is virtually indistinguishable with regard to its beneficial use from a right of way held in fee. See *Ziegler v. Ohio Water Serv. Co.* (1969), 18 Ohio St.2d 101, 103, 47 O.O.2d 244, 247 N.E.2d 728. Thus, despite appellees' protestations to the contrary, I would find that appellees are not deprived of any property rights.

## V.  CONCLUSION

{¶ 65} Waterwheel Farm, Inc., seeks to annex its property to the city of Union. In doing so, it included within the property to be annexed certain portions of Jackson Road. Except for the portion of Jackson Road that abutted Waterwheel's property, the other portions to be annexed were subject to underlying fee interests owned by persons or entities other than the petitioner, Waterwheel. Under R.C. 709.02(E), the persons possessing these underlying fee interests are not owners under R.C. 709.02(E) for purposes of this annexation because the fee interests are within the right of way. Consequently, their consent is not needed for the annexation of the roadway. Accordingly, I would reverse the judgment of the court of appeals. Therefore, I respectfully dissent.

---

Moots, Carter & Hogan, Wanda L. Carter, and Christopher E. Hogan, for appellees.

Plank & Brahm, Catherine A. Cunningham, and Richard C. Brahm, for appellant Catherine A. Cunningham, agent for Waterwheel Farm, Inc.

Moore & Associates and Joseph P. Moore, for appellant Denise Winemiller, clerk of Union City Council.

Loveland & Brosius, L.L.C, Donald F. Brosius, and Peter N. Griggs, urging affirmance for amici curiae Ohio Township Association and Coalition of Large Urban Townships.

Frederick A. Vierow, urging reversal for amici curiae County Commissioners Association of Ohio and County Engineers Association of Ohio.

Porter, Wright, Morris & Arthur, L.L.P., Robert A. Meyer Jr., J. Jeffrey McNealey, and L. Brad Hughes; Smith & Hale and Harrison W. Smith Jr.;

---

14. The exclusion clause is not applicable to any property outside the defined boundary of the road's right of way.

Vorys, Sater, Seymour & Pease, L.L.P., and Bruce Ingram, urging reversal for amici curiae Ohio Home Builders Association and Building Industries Association of Central Ohio.

Byron & Byron Co., L.P.A., Barry M. Byron, and Stephen L. Byron; and John Gotherman, urging reversal for amicus curiae Ohio Municipal League.