[Cite as *State ex rel. Cornell v. Greene Cty. Bd. Commrs.*, 2014-Ohio-5584.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

STATE OF OHIO, EX REL., MICHAEL A. CORNELL

    *Petitioner-Relator*

v.

GREENE COUNTY BOARD OF COUNTY COMMISSIONERS, et al.

    *Respondent*s

Appellate Case No.    13-CA-23

---

**DECISION AND FINAL JUDGMENT ENTRY; WRIT OF MANDAMUS**
December 19, 2014

---

PER CURIAM:

{¶ 1}  This mandamus action is before the court on competing motions for summary judgment. The underlying dispute concerns two petitions to annex property located in Beavercreek Township into the city of Beavercreek. One annexation petition was denied; the other has not been denied or granted.

{¶ 2}  The petition for mandamus was filed on May 8, 2013. An amended petition was

accepted as filed on November 15, 2013. The petitions ask this court to order the Greene County Board of County Commissioners and the individual commissioners to review and grant the second petition for annexation, or alternatively, to grant the first petition.

{¶ 3} Petitioner-Relator, Michael A. Cornell, Agent for the Petitioners ("Relator") filed a motion for summary judgment on November 1, 2013, and a supplemental motion for summary judgment on April 28, 2014.

{¶ 4} Respondents, Greene County Board of County Commissioners, Thomas Koogler, Robert J. Glaser, Jr., and Alan G. Anderson (collectively, "the Commissioners"), filed a motion for summary judgment on October 31, 2013, and a supplemental motion for summary judgment on May 12, 2014.

{¶ 5} Intervening Respondent, Beavercreek Township Board of Trustees ("the Township"), filed a motion for summary judgment on October 31, 2013, and a supplemental motion for summary judgment on May 12, 2014.

{¶ 6} The parties have filed responses and replies to the respective motions. Also pending are the Township's motion to stay proceedings (and a response and reply thereto), Relator's first motion to strike the motion to stay (and a response and reply thereto), and Relator's second motion to strike the motion to stay and notice of authority (and a response thereto). The matter is ripe for decision.

**Facts and Procedural History**

*The "Initial Petition"*

{¶ 7} On October 23, 2012, Relator filed a petition for annexation of approximately 118.403 acres in Beavercreek Township to the City of Beavercreek (the "Initial Petition"). On October 25, 2012, the Greene County Map Department filed a report stating the written legal

descriptions for the proposed annexation would be legally sufficient if corrections were made.

{¶ 8} On October 26, 2012, the Greene County Engineer filed a report with the Commissioners on the accuracy of the legal description of the perimeter and map or plat of the territory proposed to be annexed. The Engineer's report said:

> We have reviewed the referenced annexation and find that there are errors and omissions in the paperwork that need to be addressed. These issues are marked in the paperwork and described in the Memo from Peggy Middleton dated October 25, 2012. Please have all errors and omissions fixed prior to acceptance by the Commissioners.

{¶ 9} Ms. Middleton's memorandum indicated that the "legal description is legally sufficient with corrections noted." She noted several required additions and changes to the legal description and map, as well as discrepancies between the two.

{¶ 10} On October 29, 2012, the Regional Planning and Coordinating Commission of Greene County ("RPCC") filed a report with the Commissioners on the accuracy of the legal description of the perimeter and map or plat of the territory proposed to be annexed. The RPCC noted fourteen (14) "discrepancies" to be addressed in the annexation summary and adjoining summary.

{¶ 11} On October 30, 2012, the Commissioners journalized the filing of the Initial Petition. On November 7, 2012, the Council of the City of Beavercreek adopted a resolution consenting to the annexation. On November 13, 2012, the Township adopted and filed a resolution objecting to the annexation.

{¶ 12} On November 20, 2012, Relator filed revisions to the legal description and map with the Commissioners. The annexation territory remained 118.403± acres.

{¶ 13} On November 27, 2012, the Commissioners discussed the Initial Petition during their work session, but took no action on it. On December 6, 2012, the Commissioners unanimously adopted Resolution 12-12-6-6 denying the Initial Petition. In Resolution 12-12-6-6, the Commissioners found "the following conditions have not been met: 1. The Petitioners failed to file an accurate legal description of the perimeter and an accurate map of the territory proposed for annexation, in contravention of R.C. 709.02(C)(2)." No other unmet conditions were identified.

{¶ 14} Relators' amended mandamus petition seeks an order compelling the Commissioners to approve the Initial Petition.

*The "Subsequent Petition"*

{¶ 15} On December 4, 2012, two days before the Commissioners denied the Initial Petition, Relator filed a second annexation petition (the "Subsequent Petition"). The Subsequent Petition contained a legal description and map of the 118.403± acres at issue in the Initial Petition, with the corrections previously noted by the County Engineer.

{¶ 16} On December 6, 2012, immediately after denying the Initial Petition, the Commissioners journalized the Subsequent Petition.

{¶ 17} On December 6 or 7, 2012, the Greene County Engineer reported that the Subsequent Petition's legal description and map were both "legally sufficient as described." Ms. Middleton's revised memorandum contained notations showing the previously indicated errors and omissions were now "OK."

{¶ 18} On December 17, 2012, the RPCC, which had previously identified discrepancies on the annexation summary and adjoining summary, advised the Commissioners that the "the property owner adjacent to or directly across the road from the territory to be annexed is correct."

{¶ 19} The City of Beavercreek consented to the annexation on December 21, 2012. The

City passed resolutions the same day stating what services it would provide upon annexation, stating that buffers would be required for incompatible uses, and agreeing to assume the maintenance of any portion of a street divided by the boundary line that created a maintenance problem.

{¶ 20} Also on December 21, 2012, the Township adopted Resolution 2012-449 objecting to the Subsequent Petition. The Township filed the resolution with the Commissioners on December 27, 2012.

{¶ 21} On January 15, 2013, the Commissioners met to review the Subsequent Petition. During the meeting, Commissioner Anderson moved to approve the Subsequent Petition. Commissioner Glaser abstained. Commissioner Koogler took no action; the motion died for lack of a second. The Commissioners have taken no further action on the Subsequent Petition.

{¶ 22} Relator filed a Verified Petition for Writ of Mandamus on May 8, 2013, seeking to compel the Commissioners to review and grant the Subsequent Petition.

## Relevant legal standards

### *Writ of Mandamus*

{¶ 23} For a writ of mandamus to issue, the relator must show "(1) that he has a clear legal right to the relief prayed for, (2) that respondents are under a clear legal duty to perform the requested act, and (3) that relator has no plain and adequate remedy at law." *State ex rel. Dayton Newspapers, Inc. v. Wagner*, 129 Ohio App.3d 271, 273, 717 N.E.2d 773 (2d Dist.1998); *State ex rel. Plain Dealer Publishing Co. v. Barnes*, 38 Ohio St.3d 165, 167, 527 N.E.2d 807 (1988). A "writ of mandamus is an appropriate remedy should a board of county commissioners fail to perform its statutory duty in regard to a Type 2 annexation petition." *Lawrence Twp. Bd. Of Trustees v. Canal Fulton*, 185 Ohio App.3d 267, 2009-Ohio-6822, 923 N.E.2d 1180, ¶ 16 (5th Dist.); *see also* R.C. 709.023(G) ("any party may seek a writ of mandamus to compel the board of

county commissioners to perform its duties under this section").

### *Summary Judgment*

{¶ 24} Mandamus actions "ordinarily proceed as civil actions under the Ohio Rules of Civil Procedure." Loc. App.R. 8(A). Pursuant to those rules,

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

Civ.R. 56(C).

{¶ 25} Thus, to be entitled to summary judgment, the movant must show that "(1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." *State ex rel. Levin v. Schremp*, 73 Ohio St.3d 733, 734, 654 N.E.2d 1258 (1995).

{¶ 26} The parties filed a "Joint Stipulation of Facts." The Commissioners also filed notices of filing "the Transcripts requested in Petitioner-Relator's Praecipe for records" and

"Transcripts of the Meetings of the Greene County Board of County Commissioners."[1]   The parties agree that these documents, so identified in the "Joint Stipulation to Court's October 20, 2014 Order," are properly before this court.   We therefore consider them in deciding the summary judgment motions.   *State ex rel. Spencer v. E. Liverpool Planning Com'n*, 80 Ohio St.3d 297, 301, 685 N.E.2d 1251 (1997).

### *Expedited Type-2 Annexation*

{¶ 27} "Annexation by municipalities of adjacent territory is encouraged in the State of Ohio."   *Smith v. Bethel Twp. Bd. of Trustees*, 2d Dist. Miami No. 2002-CA-32, 2003-Ohio-466, ¶ 9.   It is strictly a statutory process.   *In re Petition to Annex 320 Acres to the Village of S. Lebanon,* 64 Ohio St.3d 585, 591, 597 N.E.2d 463 (1992).   "Consequently, the procedures for annexation and for challenging an annexation must be provided by the General Assembly."   *Kunkel v. Champaign Cty. Bd. of Commrs.*, 177 Ohio App.3d 718, 2008-Ohio-4017, 895 N.E.2d 905, ¶ 19 (2d Dist.), citing *State ex rel. Butler Twp. Bd. of Trustees v. Montgomery Cty. Bd. of Cty. Commrs.*, 162 Ohio App.3d 394, 2005–Ohio–3872, 833 N.E.2d 788, ¶ 8 (2d Dist.).

The legislature enacted Senate Bill 5 in 2001 and substantially altered existing annexation statutes. The new annexation statutes add three special procedures for expedited annexation. These procedures eliminate discretion by requiring the board of commissioners to approve annexation if the petition complies with certain technical requirements.

The annexation involved in the present case is the second of the three new annexation procedures and is referred to as an "expedited type–2 annexation." *State ex rel. Butler Twp. Bd. of Trustees v. Montgomery Cty. Bd. of Commrs.*, 112 Ohio

---

[1] The parties also filed a substitute transcript of the Commissioners' meetings.

St.3d 262, 264, 2006-Ohio-6411, 858 N.E.2d 1193, at ¶ 7. The statute pertaining to this type of procedure is R.C. 709.023 and is not analogous to any statutes existing prior to 2001.

*Sugarcreek Twp. v. Centerville*, 184 Ohio App.3d 480, 2009-Ohio-4794, 921 N.E.2d 655, ¶ 97-98 (2d Dist.). Expedited type-2 annexation petitions allow a unanimous group of defined owners to seek annexation in a streamlined fashion.

**{¶ 28}** R.C. 709.023 sets out the timeframe. "Upon the filing of the petition in the office of the clerk of the board of county commissioners, the clerk shall cause the petition to be entered upon the board's journal at its next regular session." R.C. 709.023(B). "Within twenty days after the date that the petition is filed, the legislative authority of the municipal corporation to which annexation is proposed shall adopt an ordinance or resolution" concerning its anticipated provision of municipal services. R.C. 709.023(C).

**{¶ 29}** "Within twenty-five days after the date that the petition is filed, the legislative authority of the municipal corporation to which annexation is proposed and each township any portion of which is included within the territory proposed for annexation may adopt and file with the board of county commissioners an ordinance or resolution consenting or objecting to the proposed annexation." R.C. 709.023(D).

**{¶ 30}** The petition shall be granted if both the municipal corporation and the township consent. R.C. 709.023(D). If either files an objection, not less than thirty or more than forty-five days after the date that the petition is filed, the board of county commissioners shall review it to determine if each of the following conditions has been met:

> **(1) The petition meets all the requirements set forth in, and was filed in the manner provided in, section 709.021 of the Revised**

**Code.**

(2) The persons who signed the petition are owners of the real estate located in the territory proposed for annexation and constitute all of the owners of real estate in that territory.

(3) The territory proposed for annexation does not exceed five hundred acres.

(4) The territory proposed for annexation shares a contiguous boundary with the municipal corporation to which annexation is proposed for a continuous length of at least five per cent of the perimeter of the territory proposed for annexation.

(5) The annexation will not create an unincorporated area of the township that is completely surrounded by the territory proposed for annexation.

(6) The municipal corporation to which annexation is proposed has agreed to provide to the territory proposed for annexation the services specified in the relevant ordinance or resolution adopted under division (C) of this section.

(7) If a street or highway will be divided or segmented by the boundary line between the township and the municipal corporation as to create a road maintenance problem, the municipal corporation to which annexation is proposed has agreed as a condition of the annexation to assume the maintenance of that street or highway or to otherwise correct the problem.

R.C. 709.023(E) (emphasis added). Of these seven requirements, the parties do not appear to dispute that subsections E(2), E(3), E(4), and E(5) are met here.[2]

{¶ 31} The parties' arguments center around the following statutory provision:

Not less than thirty or more than forty-five days after the date that the petition is filed, * * * the board of county commissioners, if it finds that each of the conditions specified in division (E) of this section has been met, shall enter upon its journal a resolution granting the annexation. If the board of county commissioners finds that one or more of the conditions specified in division (E) of this section have not been met, it shall enter upon its journal a resolution that states which of those conditions the board finds have not been met and that denies the petition.

R.C. 709.023(F).

{¶ 32} As noted above, R.C. 709.023(E)(1) requires the board of county commissioners to find that the "petition meets all the requirements set forth in, and was filed in the manner provided in, section 709.021 of the Revised Code." R.C. 709.021(B) provides in part that

Application for annexation shall be made by a petition filed with the clerk of the board of county commissioners of the county in which the territory is located, and the procedures contained in divisions (C), (D),

---

[2] While these Petitions were pending before the Commissioners, the Township objected on the grounds that R.C. 709.023(E)(6) and (E)(7) were not met. The various summary judgment motions, however, contain little argument on those grounds. This is likely because of two resolutions in the record that on their face appear to satisfy these sections. We note that the Commissioners did not indicate they denied the Initial Petition because (E)(6) and (E)(7) were not met. Because the Township and Commissioners' summary judgment motions do not support their vague statements with record evidence showing subsections (E)(6) and (E)(7) are unsatisfied, they have neither satisfied their burden on summary judgment to show they are undisputedly unmet, nor have they demonstrated a material factual dispute as to whether they are met.

and (E) of section 709.02 of the Revised Code shall be followed, except that all owners, not just a majority of owners, shall sign the petition.

R.C. 709.021(B).

{¶ 33} In turn, as relevant here, R.C. 709.02(C) provides:

The petition required by this section shall contain the following:

(1) The signatures of a majority of the owners of real estate in the territory proposed for annexation.  * * *

(2) **An accurate legal description of the perimeter and an accurate map or plat of the territory proposed for annexation;**

(3) The name of a person or persons to act as agent for the petitioners.

* * *

R.C. 709.02(C) (emphasis added).   The accuracy requirement is at the heart of this dispute.

## Analysis

{¶ 34} We consider the annexation petitions in the order they were filed, and the summary judgment motions in reverse order, as the timing of each is relevant.  Relator also asserts that a decision granting summary judgment on the Initial Petition would moot the motions for summary judgment on the Subsequent Petition.

### Initial Petition

#### Clear Legal Right and Clear Legal Duty to Grant the Initial Petition

{¶ 35} Because they are intertwined, we consider the first two elements of the mandamus claim together.  Relator argues the Commissioners have a clear legal duty to grant a petition that satisfies the seven conditions of R.C. 709.023(E)(1)-(7).  The Commissioners do not specifically

take issue with this proposition, but argue that not all the requirements, namely, the requirement that the legal description and map be accurate, are met. R.C. 709.02(C)(2); R.C. 709.023(E)(1). Therefore, the Commissioners argue, there is no clear legal right or duty.

{¶ 36} As a preliminary matter, the Commissioners direct this court to a previous decision in which we held that "[t]he determination of accuracy * * * is a question of fact within the discretion of the board." *In re Petition for Annexation of 131.983 Acres*, 2d Dist. Miami No. 94-CA-15, 1995 WL 418694, * 3 (July 7, 1995) ("*131.983 Acres*"), *citing Lariccia v. Board of Commrs.*, 38 Ohio St.2d 99, 102, 310 N.E.2d 257 (1974). Because the Commissioners have discretion to determine the accuracy of a legal description and map, they suggest, they have no duty to find the statute satisfied as a matter of law, thus defeating a mandamus claim. *See State ex rel. Husted v. Brunner*, 123 Ohio St.3d 119, 122, 2009-Ohio-4805, 914 N.E.2d 397 (noting that a court may compel the exercise of discretion on mandamus, but cannot control it).

{¶ 37} *In re 131.983 Acres* is distinguishable on the facts and the applicable law. In that case, this court affirmed the trial court's review of the Miami County Board of Commissioners' denial of an annexation petition. Notably, that petition was subject to the full statutory annexation process, including a public hearing, an appeal, and the requirement of a finding that the "territory included in the annexation petition is not unreasonably large; the map or plat is accurate; and the general good of the territory sought to be annexed will be served if the annexation petition is granted." *Id.*, *3.

{¶ 38} This court held that the three criteria were questions of fact within the board's discretion. *Id.* We noted that an amendment to the statute had narrowed the board's discretion from previous versions. *Id.* Prior to the enactment of R.C. 709.033 in 1967, the board of county commissioners, after a public

hearing, could grant an annexation petition if it found, inter alia, it to be "right that the prayer of the petition be granted." This gave the board almost unlimited discretion in approving or denying the petition. The enactment of R.C. 709.033 significantly diminished the board's discretion in annexation proceedings.

*In re Petition to Annex 320 Acres to the Village of S. Lebanon*, 64 Ohio St.3d 585, 596, 597 N.E.2d 463 (1992) (internal citations omitted).

{¶ 39} The instant case concerns subsequent amendments to the annexation statutes and further discretion-narrowing in the expedited procedures:

> The legislature enacted Senate Bill 5 in 2001 and substantially altered existing annexation statutes. The new annexation statutes add three special procedures for expedited annexation. These procedures eliminate discretion by requiring the board of commissioners to approve annexation if the petition complies with certain technical requirements.

*Sugarcreek Twp. v. Centerville*, 184 Ohio App.3d 480, 2009-Ohio-4794, 921 N.E.2d 655, ¶ 94 (2d Dist.) (emphasis added).

{¶ 40} In this case, the Commissioners have a different level of discretion than under the regime described in *In re 131.983 Acres*. We reject the suggestion that the Commissioners have discretion as to accuracy that bars mandamus relief as a matter of law. To hold otherwise would render nonsensical the statute's explicit provision for mandamus relief in type-2 annexations, because every such annexation requires accuracy. R.C. 709.023(G); *State ex rel. Cincinnati Post v. Cincinnati*, 76 Ohio St.3d 540, 543-44, 668 N.E.2d 903 (1996) (courts construe statutes to avoid unreasonable or absurd results). Here, rather than exercise discretion, the Commissioners were

required "to approve annexation if the petition complies with certain technical requirements," including accuracy. *Sugarcreek Twp*. at ¶ 94.

### Accuracy of the Initial Petition's Legal Description and Map

{¶ 41} The parties agree that an "accurate legal description of the perimeter and an accurate map or plat of the territory proposed for annexation" is required before a Board of County Commissioners grants an annexation petition. R.C. 709.02(C)(2). For summary judgment purposes, the initial (and material) dispute between the parties is whether the legal description and map in the Initial Petition were "accurate." Relator argues they were; the Commissioners and the Township argue they were not.

{¶ 42} Before reviewing the facts presented as to accuracy, we first resolve the parties' legal arguments concerning the level and timing of accuracy required. Relator argues that the Initial Petition's legal description and map were accurate when filed and when reviewed, with the exception of "minor scrivener's errors or stylistic changes" that were then corrected. Relator asserts the Commissioners were required to "cure technical errors and defects" pursuant to R.C. 709.015 (concerning procedural defects). Further, Relator asserts that annexation petitioners are permitted to correct discrepancies in filed petitions where they do not add to the territory and the owners do not change. Relator argues, in essence, that substantial compliance with the statutes, including the accuracy requirement, is sufficient.

{¶ 43} The Commissioners respond that the legal description and map filed with the Initial Petition were not accurate. They also argue that no statute authorizes amendments to type-2 petitions, and that amendments are therefore not permitted. With respect to R.C. 709.015, the Commissioners emphasize the difference between procedural and substantive requirements, and assert that the accuracy requirement is substantive. Finally, the Commissioners dispute the

characterization of changes as the correction of scrivener's errors.

{¶ 44} We first address the Commissioners' argument that no statute authorizes amendments to type-2 annexation petitions. Revised Code Chapter 709 contains a provision allowing annexation petitioners to amend regular, non-expedited petitions:

> The petition may be amended without further notice by leave of the
> board of county commissioners and with the consent of the agent for
> the petitioners if the amendment does not add to the territory
> embraced in the original petition and is made at least fifteen days
> before the date of the hearing.

R.C. 709.031(B).

{¶ 45} The amendment provision does not apply to expedited petitions, pursuant to R.C. 709.021(C):

> Except as otherwise provided in this section, only this section and
> sections 709.014, 709.015, 709.04, 709.10, 709.11, 709.12, 709.192,
> 709.20, and 709.21 of the Revised Code apply to the granting of an
> annexation described in this section.

R.C. 709.021(C). As the amendment provision is not included in this list or otherwise incorporated, it is inapplicable to expedited type-2 petitions. And, because "annexation is strictly a statutory process," the absence of a statute authorizing amendments means that amendments are not permitted. *In re Petition to Annex 320 Acres to the Village of S. Lebanon*, 64 Ohio St.3d 585, 591, 597 N.E.2d 463 (1992). This is particularly true where the statute contains an amendment provision but specifically labels it inapplicable in type-2 annexations. *See State ex rel. Butler Twp. Bd. of Trustees v. Montgomery Cty. Bd. of Commrs.*, 124 Ohio St.3d 390, 394, 2010-Ohio-169, 922

N.E.2d 945, ¶ 20-21 ("The canon expressio unius est exclusio alterius tells us that the express inclusion of one thing implies the exclusion of the other.") (internal citations omitted).

{¶ 46} In *In re 320 Acres*, the Ohio Supreme Court considered a similar argument concerning statutory authorization. There, appellants argued that boards must grant or deny annexation petitions in toto, rather than granting or denying them in part. The Court agreed that "there is no statutory scheme which permits the partial allowance or disallowance of a proposed annexation." *In re 320 Acres* at 597. Without such authority, the board could not partially grant or deny the petition. *Id.* We find this analysis instructive.

{¶ 47} We also find our previous decision in *Moore v. Union Twp. Bd. of Trustees* analogous. In *Moore*, we agreed that

> "it seems axiomatic that a formal petition of legal import and standing
> should include, at the time of its execution, all of the information and
> material required by law so as to apprise signatories of its content, and
> that it should not be supplemented, modified, or remodified after its
> signing except pursuant to amendment procedures countenanced by
> law." This interpretation by the Board was a reasonable one, and we
> agree with it.

2d Dist. Miami No. 2002CA44, 2003-Ohio-914, ¶ 19 (emphasis added). Although these decisions were rendered in different contexts, they support our determination that because there is no statutory authority for amending filed type-2 petitions, such petitions may not be amended. This is not the end of our analysis, however.

{¶ 48} R.C. 709.015, entitled "Directory nature of procedural requirements," is contained in the statutory list of provisions applicable to type-2 petitions, and does allow "procedural defects" to

be cured.   R.C. 709.015 provides:

> The procedural requirements set forth in sections 709.02 to 709.21 of the Revised Code are directory in nature. Substantial compliance with the procedural requirements of those sections is sufficient to grant the board of county commissioners jurisdiction to hear and render its decision on a petition for annexation filed under those sections. <u>The board shall cure a procedural defect and shall not deny a petition for annexation solely upon the basis of procedural defects.</u>

R.C. 709.015 (emphasis added).

**{¶ 49}** This statute speaks in terms of both "procedural requirements" and "procedural defects." *Id*. "In examining the language of the statute, the legislature has indicated that substantial compliance with the procedural requirements is sufficient to grant the Board *jurisdiction* to hear the matter and to ultimately render its decision." *Wadsworth Twp. Bd. of Trustees v. Medina Cty. Bd. of Commrs.*, 9th Dist. Medina No. 09CA0036-M, 2010-Ohio-5921, ¶ 16 (emphasis in original).

In other words, when faced with a procedural defect, the defect will not be a bar to the Board's legal authority to proceed to hear the matter, provided there has been substantial compliance with the procedure. However, the legislature has also as made clear that "the board shall cure a procedural defect[.]" *Id*. Thus, R.C. 709.015 does not absolve compliance with the procedural requirements of the statutes; rather it directs the Board to cure any procedural defect.

*Id*. at ¶ 16.

**{¶ 50}** Here, the parties disagree whether the attempted changes to the petition – correcting the errors and omissions on the map and legal description – correct "procedural defects."   Relator

suggests a meaning of procedural defects that equates with minor errors, and argues that substantial compliance with the annexation requirements is sufficient to require the Commissioners to grant the petition under R.C. 709.015.   We find this argument too broad.

**{¶ 51}** Substantial compliance with procedural requirements is sufficient to grant the board *jurisdiction* to consider the matter.   *Wadsworth Twp.* at ¶ 16.   The statute does not say, and we will not construe it to mean, that substantial compliance with every annexation requirement is sufficient to compel the board to exercise its jurisdiction and *grant* the petition.   *See generally State ex rel. Butler Twp. Bd. of Trustees v. Montgomery Cty. Bd. of Commrs.*, 124 Ohio St.3d 390, 2010-Ohio-169, 922 N.E.2d 945, ¶ 21 ("a court cannot read words into a statute but must give effect to the words used in the statute.").   As the Commissioners here have already exercised their jurisdiction to consider the Initial Petition, the question of whether there was substantial compliance with the procedural requirements sufficient to invoke that jurisdiction is no longer an issue.

**{¶ 52}** The more relevant question is whether Relator's failure to provide an accurate legal description and map (if the petition is indeed inaccurate) is a "procedural defect" that the Commissioners must cure.   Procedural law, a deviation from which may be described as a procedural defect, is defined as "rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves."   Black's Law Dictionary (9th ed. 2009).   Substantive law is the "part of the law that creates, defines, and regulates the rights, duties, and powers of parties.   *Id.*

**{¶ 53}** Timely journalization of the petition (R.C. 709.023(B)), giving notice to the proper parties (R.C. 709.023(B)), and the filing of objections by the township on the relevant statutory factors (R.C. 709.023(D)) are examples of the procedural rules governing annexation.   The requirement that a filed petition contain an accurate legal description and map describing the

territory to be annexed, like the requirement that all the defined owners have signed (R.C. 709.023(E)(2)) that the area not exceed 500 acres (R.C. 709.023(E)(3)), or that the area contain at least five per cent contiguous border with the annexed property (R.C. 709.023(E)(4)), are more properly viewed as substantive requirements. Defects or deviations from those requirements in the petition affect the parties' substantive rights, duties, and powers. For example, if petitioners sought to annex 501 acres, they would be substantively barred from using the expedited type-2 annexation procedure. R.C. 709.023(E)(3). The requirement has nothing to do with the procedure for pursuing annexation; it concerns the standard against which annexation is evaluated.

{¶ 54} The same is true for the requirement that the petition contain an accurate legal description and map. No procedure is implicated by the requirement, which is confirmed by the absence of a procedure for amending the petition and its legal description. While defects in the Initial Petition's legal description or map may indeed be minor or technical as Relator argues, they are substantive defects and not curable by the Commissioners. R.C. 709.015.

{¶ 55} We are aware of the Fifth District's decision in *Lawrence Twp. Board of Trustees v. City of Canal Fulton*, 185 Ohio App.3d 267, 2009-Ohio-6822, 923 N.E.2d 1180 (5th Dist.), which, in our view, is factually distinguishable.

{¶ 56} In *Lawrence Twp.*, the board had before it a type-2 annexation petition, which it approved, finding all the requirements of 709.023(E)(1)-(7) met. *Id*. at ¶ 3. The day after approval, the Stark County Engineer's Office informed the board that the legal description contained a single error: the length of a curve was L=1131.64', rather than L=1311.64'. An additional discrepancy was later found, where the legal description included a central angle of 05'04'06, and the plat was incorrectly marked 05'04'05. *Id*. at ¶ 17.

{¶ 57} In moving for summary judgment in *Lawrence Twp.*, the township argued the

petition was inaccurate and defective. The trial court denied the township's summary judgment motion and upheld the annexation. The court cited R.C. 709.015 and briefly analyzed the situation:

> We concur with the trial court that the description contained in the plat was a scrivener's error that was readily corrected and that did "not rise to the level of a reason that the Commissioners should have denied the annexation." We find that there was substantial compliance with the requirements of R.C. 709.02(C)(2) and that any procedural defects have since been cured.

*Lawrence Twp.* at ¶ 20. The *Lawrence Twp.* court did not consider the situation before this court – where the County Engineer reported several errors and omissions in the petition *before* it was considered. The number and type of inaccuracies identified by the County Engineer here, as discussed below, is also distinguishable.

{¶ 58} Although it uses the "substantial compliance" language of R.C. 709.015, we read *Lawrence Twp.* to suggest that scrivener's errors discovered after a petition's approval have little retroactive impact on the approval's legitimacy. It neither squarely answers the question of whether "minor" errors presented to the board during review could properly be grounds for denial of a petition, nor specifically holds that scrivener's errors are the equivalent of procedural defects. Because the statute is clear that only procedural defects may be corrected, we decline to hold that minor errors in substantive requirements may also be corrected.

{¶ 59} Although the standard for accuracy we describe here is indeed high, it is consistent with the expedited nature of type-2 proceedings, including their truncated timeframes and the eliminated requirement for public hearing, as well as the board's lack of discretion in granting or denying such petitions.

An examination of Senate Bill 5 indicates that some of the overall goals of the bill—including those of the new expedited procedures—were to promote consistency in decision-making by putting in place firm standards to govern the consideration of annexation petitions, to improve the efficiency of annexations by creating the expedited processes, and to promote cooperation among local governments.

*State ex rel. Butler Twp. Bd. of Trustees v. Montgomery Cty. Bd. of Commrs.*, 112 Ohio St.3d 262, 2006-Ohio-6411, 858 N.E.2d 1193, ¶ 8.   Here, the General Assembly created a process without much discretion for boards – either the petition meets the requirements, or it does not.   To import a "substantial compliance" standard into the substantive requirements for annexation would blur those analytic lines and thwart the General Assembly's goals in creating the expedited annexation procedures.

**{¶ 60}** Against this background, we review the matters that were before the Commissioners here concerning the legal description and map.   The Greene County Engineer reported that there were "errors and omissions in the paperwork that need to be addressed."   The errors and omissions are detailed in a report from Peggy Middleton, initially dated October 25, 2012 and revised several times thereafter.   Three corrections were required to the written legal description.   Specifically, the words "to the right" were inserted at three points to describe the direction of the perimeter curve. In addition, the corresponding description of these perimeter curves were shown on the map as straight lines, rather than curves.   Ms. Middleton later identified an additional discrepancy: the written description reflected a curve radius of 208$\underline{2}$.26, while the map reflected the same curve radius as 208$\underline{6}$.26.

**{¶ 61}** The map also required the acreage of each parcel to be labelled; the addition of the plat cabinet and page in place of the plat book and page; and the correction of the direction of

several lines[3] (one from N to S, and six from E to W), and one degree notation (N40°13'41"W to N4°13'41"W).

{¶ 62} There is no dispute between the parties that these numerous discrepancies, errors, and omissions existed in the Initial Petition as filed. The legal description and map are therefore inaccurate, and the Initial Petition does not meet the requirements of R.C. 709.023 and R.C. 709.021.

{¶ 63} Each party has moved for summary judgment, alleging there is no genuine issue of material fact remaining. We find that reasonable minds could only conclude that the discrepancies, errors, and omissions rendered the legal description and map inaccurate. Because it is inaccurate, it does not satisfy the requirements of a type-2 annexation petition. The annexation petitioners had no clear legal right to have the Initial Petition granted, and the Commissioners had no clear legal duty to grant it.

### *Conclusion on the Initial Petition*

{¶ 64} Because the legal description and map were not accurate, because the attempted changes were not procedural but substantive, and because there is no statute authorizing amendments to type-2 petitions to correct substantive errors, we hold that the first two elements of the mandamus claim are not satisfied. We therefore sustain the Commissioners and Township's supplemental motions for summary judgment, and overrule Relator's supplemental motion for summary judgment. The writ of mandamus is denied as to the Initial Petition.

### ***Subsequent Petition***

### *Clear Legal Right and Clear Legal Duty to **Consider** the Subsequent Petition*

{¶ 65} We also consider together the first two elements of the mandamus claim concerning

---

[3] Although not written in Ms. Middleton's report, notes on the map also show a directional correction required for Line 14 in the chart on the lower left corner of the map.

the Subsequent Petition. Relator argues that all seven statutory requirements were met when he filed the Subsequent Petition, and that the Commissioners had a duty to "enter upon its journal a resolution granting the annexation." R.C. 709.023(F). Relator notes that the statute requires boards to either grant or deny annexation petitions; there is no authority for other courses of action, such as simply failing to reach a decision.

{¶ 66} Relator directs the court to *State ex rel. Smith v. Frost*, 74 Ohio St.3d 107, 111-112, 656 N.E.2d 673 (1995), in which the Ohio Supreme Court considered whether relators had a clear legal right, and the board a corresponding clear legal duty, to consider an annexation petition. The court held:

> Therefore, as to the issues of clear legal right and clear legal duty, "[w]hen a duty is enjoined by statute upon an administrative board to hear and decide an issue within a specific time limitation, it is mandatory that the board act accordingly, unless to do so would lead to an inevitable conflict with rights which are superior to those of the party for whose benefit the duty is to be discharged." *State ex rel. Hannan v. DeCourcy* (1969), 18 Ohio St.2d 73, 47 O.O.2d 193, 247 N.E.2d 465, paragraph one of the syllabus. Under R.C. 709.031, the commissioners were required to conduct a hearing on relators' annexation petition no later than ninety days after the petition was filed in the office of the county auditor. When a board of county commissioners defers consideration of landowners' annexation petitions pending a vote of electors on a municipal annexation petition, a writ of mandamus will lie to compel the commissioners to

consider the annexation petitions in the order in which they should have been considered had the time limitations been followed initially. *Holcomb v. Summit Cty. Bd. of Commrs.* (1980), 62 Ohio St.2d 241, 16 O.O.3d 278, 405 N.E.2d 262. As in *Holcomb,* relators have established a clear legal right to have the commissioners proceed on their annexation petition and a corresponding clear legal duty on the part of the commissioners to do so.

*Frost* at 111-112.

{¶ 67} As in *Frost*, we find that the type-2 annexation statute requires the Commissioners to consider and decide the Subsequent Petition on the following timeframe:

Not less than thirty or more than forty-five days after the date that the petition is filed, * * * the board of county commissioners, if it finds that each of the conditions specified in division (E) of this section has been met, shall enter upon its journal a resolution granting the annexation. If the board of county commissioners finds that one or more of the conditions specified in division (E) of this section have not been met, it shall enter upon its journal a resolution that states which of those conditions the board finds have not been met and that denies the petition.

R.C. 709.023(F). Here, the Subsequent Petition was filed on December 4, 2012, and the Commissioners were statutorily required to grant or deny it thirty to forty-five days thereafter. They failed to do so.

{¶ 68} The Commissioners offer three justifications for their inaction on the Subsequent

Petition, all of which are premised on the same basic argument. The Commissioners argue that there is no statutory authority for the filing of multiple annexation petitions, and therefore the Subsequent Petition was "invalid" when filed. They further assert that the Subsequent Petition did not comply with their internal Resolution No. 02-6-4-5, which states that "[a] petition dismissed by the board may be re-filed at any time upon correction of the deficiency." According to the Commissioners, because the Subsequent Petition was filed before they dismissed the Initial Petition, they have no duty to act on it.

{¶ 69} With respect to the Commissioner's argument that there is no statutory authority for filing more than one petition at a time, we agree that the statute contains no provision expressly allowing or prohibiting concurrently-filed petitions. Unlike the situation discussed above, however, there is no parallel statutory provision expressly allowing or prohibiting concurrent petitions in any other circumstances. The statute instead contains a provision that presumes multiple petitions will be filed and instructs boards how to proceed when they are filed:

> If, after a petition for annexation is filed with the board of county
> commissioners, one or more other petitions are filed containing all or
> a part of the territory contained in the first petition, the board shall
> hear and decide the petitions in the order in which they were filed.

R.C. 709.013(A).

{¶ 70} This provision does not apply to type-2 annexation petitions. R.C. 709.021(C). It also does not *authorize* the filing of multiple petitions, but rather dictates the order in which the board must hear such petitions, addressing the board's responsibilities, not the annexation petitioner's rights or abilities. The provision implicitly recognizes that more than one petition may be filed covering the same territory. Application of the canon expressio unius est exclusio alterius

here means only that the board need not hear multiple type-2 petitions in the order they were filed, not that petitioners are prohibited from filing multiple petitions.

{¶ 71} Were there a requirement that Relator wait to file a second petition until the Commissioners denied a previous one, we would find a deviation from that requirement the type of procedural defect the Commissioners must cure. R.C. 709.015. Here, the Initial Petition was denied on December 6, 2012. The Subsequent Petition was filed on December 4, 2012, but not journalized until *after* the Board denied the Initial Petition. The two day overlap, if it mattered from a procedural perspective, would not justify the Commissioners' denial, or in this case, failure to act on, the Subsequent Petition. It would not, in the language of R.C. 715.015, deprive the Commissioners of jurisdiction to consider the petition; they "shall not deny a petition for annexation solely upon the basis of procedural defects." We reject the Commissioners' argument they have no duty to act because the Subsequent Petition was not filed after denied the Initial Petition.

{¶ 72} With respect to the Commissioners' argument that the Subsequent Petition violated their internal Resolution, we initially question whether the Commissioners have the authority to set additional requirements for type-2 expedited petitions. *See State ex rel. Shriver v. Bd. of Commrs. of Belmont County*, 148 Ohio St. 277, 280, 74 N.E.2d 248, 250 (1947) (a "board of county commissioners is a mere creature of statute and has only such power and jurisdiction as are expressly conferred by statutory provision.") (internal citation and quotation omitted). R.C. 709.023 contains no requirement, in addition to the seven factors the General Assembly provided, that any local board requirements must also be satisfied. We decline to read into R.C. 709.023 such a requirement, as it could vitiate the streamline and discretionless regime created for type-2 petitions. Moreover, we would consider any additional requirement in the same fashion as the procedural defect discussed above. The Commissioners would be required to cure the defect, and

could not deny the petition because of it.   R.C. 709.015.

**{¶ 73}** We likewise consider the Commissioners' argument that they only must act on "valid" petitions to be without merit.   The Commissioners assert that "[i]t is only when a valid petition is before the Board that a clear legal duty is imposed on the Board."   They cite to *State ex rel. Overholser Builders, L.L.C. v. Clark Cty. Bd. of Commrs.*, 174 Ohio App.3d 631, 2007-Ohio-7230, 884 N.E.2d 71 (2d Dist.), which states, in the context of a type-1 petition under R.C. 709.022:

> Assuming arguendo that relators' petition was valid, the Board of Clark County Commissioners would have been required to enter upon its journal a resolution granting the annexation; the board of Clark County Commissioners would have lacked the discretion to act otherwise. R.C. 709.022(A). Accordingly, relators would have been entitled to have their petition granted. Thus, when a valid petition has been filed under R.C. 709.022, that statute creates a legal duty on the part of the board of county commissioners to grant the petition and a corresponding right on the part of annexation petitioners to have the petition granted.

*Id*. at ¶ 15.

**{¶ 74}** R.C. 709.023 does not interpose an additional "validity" requirement between the filing of an annexation petition and a board's duty to consider it, and this court did not create such a requirement in *Overholser*.   Rather, we used the term "valid" to describe a petition that meets all the statutory requirements.   If those requirements are met, we held, the reviewing board has a legal duty to *grant* the petition.   Conversely, if the requirements are not met, the board is statutorily

required to deny the petition, and provide its reasons for denial. R.C. 709.023(F). As in *Overholser*, we find that R.C. 709.023 imposes a clear legal duty in type-2 annexations. We decline to read an additional "validity" requirement into the statute. A board's duty to act on a petition is triggered by the filing of a petition; its duty to grant it is conditioned upon the substance of the petition. *See* R.C. 709.023(F). In other words, the "validity" of a petition (the satisfaction of the statutory requirements) determines *how* the board acts on the petition, not whether it has a duty to act. Accordingly, we hold that Relator's filing of the Subsequent Petition triggered the Commissioners' clear legal duty to act on the petition within the statutory timeframe.

### *Clear Legal Right and Clear Legal Duty to **Grant** the Subsequent Petition*

{¶ 75} Relator also asks this court to compel the Commissioners to grant the Subsequent Petition, and points to record evidence that all seven statutory factors are met. The Commissioners argue that they, not this court, must review whether the seven statutory factors for annexation are met. The Commissioners do not, however, argue that any specific factor is not met, and they fail to point to evidence showing any remaining genuine issue of material fact as to the satisfaction of the seven factors. R.C. 709.023(E)(1)-(7).

{¶ 76} Civ.R. 56(E) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.

Civ.R. 56(E). Here, Relator adequately supports his argument that all seven statutory requirements

are met.  He points to, among other things, unrebutted evidence that the legal description and map filed with the Subsequent Petition were accurate.  Notably, the Commissioners do not dispute accuracy in this context.  They have not satisfied their reciprocal burden to show that one or more statutory requirement is not met, or that genuine issues remain for resolution.  Civ.R. 56(E).  Summary judgment in Relator's favor, and against the Commissioners, is therefore appropriate.

{¶ 77} The Township, also moving for summary judgment against Relator, also fails to point to any remaining factual issues under R.C. 709.023.  Rather, the Township asserts that Relator's evidence before this court "cannot substitute for the judgment and review of a board of county commissioners were there to be a valid petition before it.  That scrutiny is the role of a board of county commissioners when it has before it a valid petition – not the role of a court of appeals in a mandamus action."  We reject the argument that we lack the authority to evaluate the evidence before us.

{¶ 78} R.C. 709.023(G) allows a party to "seek a writ of mandamus to compel the board of county commissioners to perform its duties under this section."  The Commissioners' duties here do not end at consideration of the petition.  They must either grant or deny the petition.  R.C. 709.023(F).  As we held in *Overholser*, the filing of a petition that meets the statutory requirements "creates a legal duty on the part of the board of county commissions to *grant* the petition."  *State ex rel. Overholser Builders, L.L.C. v. Clark Cty. Bd. of Commrs.,* 174 Ohio App.3d 631, 2007-Ohio-7230, 884 N.E.2d 71, ¶ 15 (2d Dist.) (emphasis added).  Mandamus will lie to compel the Commissioners to grant an annexation petition.  Here, the Commissioners had a clear legal duty to grant the petition, and Relator had a clear legal right to have it granted.

*Lack of Adequate Remedy at Law*

{¶ 79} "The writ of mandamus must not be issued when there is a plain and adequate

remedy in the ordinary course of the law." R.C. 2731.05. "In order for an alternative remedy to constitute an adequate remedy at law, it must be complete, beneficial, and speedy." *State ex rel. Crabtree v. Franklin Cty. Bd. of Health*, 77 Ohio St.3d 247, 249, 673 N.E.2d 1281 (1997). A "writ of mandamus is an appropriate remedy should a board of county commissioners fail to perform its statutory duty in regard to a Type 2 annexation petition." *Lawrence Twp. Bd. Of Trustees v. Canal Fulton*, 185 Ohio App.3d 267, 2009-Ohio-6822, 923 N.E.2d 1180, ¶ 16 (5th Dist.).

{¶ 80} Here, Relator asserts that mandamus is the annexation petitioners' sole remedy, as the statute bars any appeal. R.C. 709.023(G) ("There is no appeal in law or equity from the board's entry of any resolution under this section, but any party may seek a writ of mandamus to compel the board of county commissioners to perform its duties under this section."). The Commissioners and the Township argue that Relator has another remedy: he may withdraw the Subsequent Petition and file a third petition for annexation.

{¶ 81} We find that Relator has no adequate remedy for seeking approval of the Subsequent Petition. Relator notes that while the petitions were pending, the Township transferred a portion of the territory sought to be annexed to a third, non-governmental party, allegedly in an attempt to defeat later attempts at annexation under R.C. 709.023 (requiring 100% "owner" participation). *But see* R.C. 709.02(E) ("no * * * private corporation * * * that has become an owner of real estate by a conveyance, the primary purpose of which is to affect the number of owners required to sign a petition for annexation, is included within" the definition of "owner"). We need not resolve this issue here. Depending on the effect of the ownership change, a refiled Subsequent Petition may appropriately be denied as not adequately reflecting the owners of the various parcels. *See* R.C. 709.02(E) ("An owner is determined as of the date the petition is filed with the board of county commissioners"). And a new, revised third petition may have different issues related to the

changed ownership.

{¶ 82} While Relator may have a manner in which to pursue similar relief, he lacks an adequate remedy at law to enforce the right to annexation as sought in the Subsequent Petition. *State ex rel. Caspar v. City of Dayton*, 53 Ohio St.3d 16, 19, 558 N.E.2d 49 (1990) (a proposed remedy "is inadequate because it cannot provide appellants the relief sought in their complaint."). Here, Relator seeks to compel the Commissioners to grant the already-filed Subsequent Petition. There is no other adequate remedy for pursuing that relief.

### *Conclusion on the Subsequent Petition*

{¶ 83} Relator has shown a clear legal right to have the Subsequent Petition considered and granted, and a corresponding duty of the Commissioners to consider and grant it. Relator has also shown he lacks an adequate remedy at law. No genuine issues of material fact remain for resolution.

{¶ 84} We therefore sustain Relator's motion for summary judgment. We overrule the Commissioners and Township's respective motions for summary judgment. The petition for writ of mandamus is granted as to the Subsequent Petition.

### **Ancillary Issues**

### *Proper parties*

{¶ 85} The Commissioners assert that while this court can issue a writ of mandamus against the Respondent, the Greene County Board of County Commissioners, it cannot compel the individual commissioners to perform the Board's duties. The Commissioners have not, however, moved to dismiss the individual commissioners as parties. They provide no authority for the suggestion that they, individually, have no duty to act in conformance with the annexation statute. Relator counters that "[t]he Board cannot avoid its duty simply because individual commissioner(s)

refuse to take any official action on the petition after it was properly accepted for review."

{¶ 86} Because we grant the writ to compel the Greene County Board of County Commissioners to grant the Subsequent Petition, we decline to decide whether we must also specifically compel the individual commissioners to follow the law. The Board, acting as it must through the individual commissioners, must grant the Subsequent Petition.

### *Attorney Fees*

{¶ 87} In their summary judgment motion, the Commissioners argue that Relator is not entitled to attorney fees as requested in the mandamus petition. The Commissioners assert there is no statutory provision for attorney fees, and that attorney fees are generally not available in mandamus, and not without a showing of bad faith. Relator does not specifically respond to this argument or point to facts establishing bad faith.

{¶ 88} R.C. 2731.11 describes the damages available in a mandamus action:

If judgment in a proceeding for a writ of mandamus is rendered for the plaintiff, the relator may recover the damages which he has sustained, to be ascertained by the court or a jury, or by a referee or master, as in a civil action, and costs.

{¶ 89} The Ohio Supreme Court has held that "attorney fees are not recoverable as damages under R.C. 2731.11." *State ex rel. Chapnick v. E. Cleveland City School Dist. Bd. of Edn.*, 93 Ohio St.3d 449, 451, 755 N.E.2d 883 (2001). In the absence of statutory authority, a party may seek attorney fees under Ohio's general rule that a prevailing party may be entitled to an award of attorney fees where the non-prevailing party acted in bad faith. *Id.*, citing *State ex rel. Kabatek v. Stackhouse*, 6 Ohio St.3d 55, 55-56, 451 N.E.2d 248 (1983).

Bad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious

wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.

*State ex rel. Gerchak v. Tablack*, 117 Ohio App.3d 222, 227-228, 690 N.E.2d 93 (7th Dist.1997), quoting Ohio Jurisprudence 3d Words and Phrases 20. Here, Relator does not direct us to any facts rising to the level of bad faith. *See* Civ.R. 56(E).

{¶ 90} "[T]he fact that [the Commissioners] interposed a defense which was ultimately overruled does not, in and of itself, demonstrate bad faith." *State ex rel. Kabatek v. Stackhouse*, 6 Ohio St.3d 55, 56, 451 N.E.2d 248, 249 (1983). The record shows that the Commissioners' refusal to act on the second petition was supported by legal advice, which "merely demonstrates that counsel in this case held disparate legal views as to relator's entitlement to" annexation. *State ex rel. Crockett v. Robinson*, 67 Ohio St.2d 363, 369, 423 N.E.2d 1099 (1981). "This, without more, does not constitute bad faith." *Id*. Although Relator suggests elsewhere that the Commissioners' transfer of land during the pendency of the annexation petitions was improper or devious, there is nothing before this court showing such transfer was unlawful. And, as Relator notes, the statute appears to protect annexation petitioners from transfers by removing such transferees from the definition of "owners." R.C. 709.02(E) ("no * * * private corporation * * * that has become an owner of real estate by a conveyance, the primary purpose of which is to affect the number of owners required to sign a petition for annexation, is included within" the definition of "owner").

{¶ 91} Accordingly, we sustain the Commissioners' summary judgment motion as to attorney fees. We need not and do not reach the related argument concerning the Commissioners' asserted immunity from attorney fees.

### *Motion to Stay and Motions to Strike the Motion to Stay*

{¶ 92} While the parties were briefing the supplemental summary judgment motions, the Township filed a motion to stay the proceedings. As grounds for the motion, the Township asserted that the annexation petitioners had directed their agent, Relator, to file a notice of voluntary dismissal. The Township filed a document purporting to show such direction to Relator.

{¶ 93} Relator disputed that a voluntary dismissal would be forthcoming, and in fact no voluntary dismissal was filed. Relator also moved to strike the motion to stay, arguing the document attached to the motion to stay was improper and should be stricken or disregarded.

{¶ 94} The document at issue is neither particularly inappropriate nor particularly relevant to the issues presented here, and Relator has filed his own evidence to counter it. We therefore overrule both the motion to stay and the motions to strike the motion to stay.

## CONCLUSION

{¶ 95} We grant the Amended Verified Petition for Writ of Mandamus in part, and deny it in part.

{¶ 96} We deny the writ of mandamus to compel the Greene County Board of County Commissioners to grant the Initial Petition.

{¶ 97} We grant a writ of mandamus to compel the Greene County Board of County Commissioners to consider and grant the Subsequent Petition.

{¶ 98} We overrule the Township's Motion to Stay.

{¶ 99} We overrule Relator's Motions to Strike.

SO ORDERED.

_____

JEFFREY E. FROELICH, Presiding Judge

_____

MARY E. DONOVAN, Judge

_____

JEFFREY M. WELBAUM, Judge

To The Clerk: Within three (3) days of entering this judgment on the journal, you are directed to serve on all parties not in default for failure to appear notice of the judgment and the date of its entry upon the journal, pursuant to Civ.R. 58(B).

_____

JEFFREY E. FROELICH, Presiding Judge

Copies mailed to:

Stephen McHugh
Attorney for Petitioner-Relator
33 W. First Street, Suite 600
Dayton, Ohio 45402

Catherine Cunningham
Attorney for Petitioner-Relator
65 E. State Street, Suite 1800
Columbus, Ohio 43215

Lawrence Barbiere
Attorney for Respondents
5300 Socialville-Foster Road, Suite 200
Mason, Ohio 45040

Wanda Carter
Attorney for Intervening Respondent
5025 Arlington Centre Blvd., Suite 400
Columbus, Ohio 43220

CA3/KY

CA3/KY